## HARRISON v. SNOOK, Warden.

District Court, N. D. Georgia.   October 29, 1927.

No. 107.

1. **Criminal law** ⬥⟩1218—Federal statutes authorizing imprisonment of federal prisoners in state institutions have not been superseded, and federal sentence in state penitentiary was lawful (18 USCA § 693 et seq.; Cr. Code S. C. 1922, § 954).

18 USCA § 693 et seq., authorizing imprisonment of federal prisoners in state penal institutions, have not been superseded by federal penitentiary legislation, and direction of federal court that federal sentence imposed in South Carolina be served in South Carolina state penitentiary, as authorized by Cr. Code S. C. 1922, § 954, was therefore lawful.

2. **Pardon** ⬥⟩9—State parole of prisoner serving concurrent state and federal sentences in state prison does not affect federal sentence; "to run concurrently" (18 USCA § 693).

Provision of 18 USCA § 693, making federal prisoners in state institutions subject to the same discipline and treatment as the state convicts, refers to discipline and treatment within the prison, and not to modifications of the sentence by parole or pardon, and state parole of prisoner serving concurrent federal and state sentences in state penitentiary had no effect on the federal sentence, in view of federal parole laws (18 USCA §§ 716, 722), words "to run concurrently," in federal sentence, merely meaning that sentences are to be served at the same time, and does not subject federal sentence to any contingency of termination or change affecting state sentence.

3. **Prisons** ⬥⟩13—Release from state penitentiary under state parole of prisoner serving concurrent federal and state sentences held not to authorize his transfer to federal penitentiary (18 USCA §§ 696, 698, 792).

Under 18 USCA §§ 696, 698, 792, release from state prison under state parole of prisoner serving concurrent federal and state sen-

tences in state and district of conviction did not authorize his transfer to federal penitentiary by Attorney General on theory of the insecurity of state penitentiary, mistake of superintendent of state penitentiary as to effect of state parole, not being the "insufficiency" intended by said section 698, and change not being made on prisoner's application.

Habeas Corpus. Proceeding by Bayles W. Harrison against John W. Snook, Warden. Petitioner remanded to the South Carolina state penitentiary.

Price & Poag and J. D. Poag, all of Greenville, S. C., for petitioner.

John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

SIBLEY, District Judge. The applicant was sentenced in a federal court in South Carolina to serve a sentence of more than a year in the South Carolina state penitentiary, to run concurrently with a state sentence there. During the term of the sentences the Governor of South Carolina, under the parole laws of that state (Cr. Code S. C. 1922, § 969), ordered the applicant to be released on parole, and he was released. Thereupon the Attorney General of the United States ordered his arrest and transfer to the United States penitentiary at Atlanta. After incarceration there applicant brings habeas corpus, contending that he should be at liberty under his parole, or that he should be returned to the South Carolina penitentiary.

[1] Prior to the erection of the federal penitentiaries the Revised Statutes provided, under various sections, for the incarceration of federal prisoners in state institutions. These provisions are now to be found in the United States Code, title 18, section 693 and following (18 USCA § 693 et seq.). Section 695 gives power to the federal judges to order a sentence of more than a year to be executed in any state jail or penitentiary within the district or state where the court is held, the use of which jail or penitentiary is allowed by the Legislature of the state for that purpose. Code of South Carolina 1922, vol. 2, § 954, contains a legislative consent for such use of the South Carolina penitentiary. The sentence involved here was therefore authorized by law unless section 695, formerly R. S. § 5541, is modified by later legislation. No express repeal, or legislation so inconsistent as to imply repeal, has been pointed out. The federal penitentiary legislation has not been considered to supersede this or cognate sections of the Revised Statutes relating to imprisonment in state institutions. See Brede v. Powers, United States Marshal, 263

U. S. 4, 44 S. Ct. 8, 68 L. Ed. 132. Their retention in the Code argues a belief on the part of Congress that they are of force. The original direction by the judge that the federal sentence be executed in the South Carolina penitentiary was therefore lawful.

[2] The state parole was ineffectual to suspend the federal sentence. It is true that by section 693 federal prisoners in state institutions are "in all respects * * * subject to the same discipline and treatment as convicts sentenced by the courts of the state or territory in which such jail or penitentiary is situated," but this has reference to discipline and treatment within the prison, and not to modifications of the sentence by parole or pardon. The parole here in question made no reference to the federal sentence and did not expressly undertake to suspend or affect it. Moreover, the later federal parole laws (sections 716, 722) provide for federal boards of parole in all state penitentiaries, where federal convicts are confined, and section 716 declares that no release on parole shall become operative until approved by the Attorney General of the United States. The parole by the Governor under the laws of South Carolina had no effect on the federal sentence.

But it is argued that this sentence was to run concurrently with the state sentence, and could do so only by yielding to the modification by parole of the state sentence. Had this been the intention of the judge such a limitation of the sentence would probably be held unjustified by federal law. But such is not the meaning of the words "to run concurrently" in this connection. They mean only that the two sentences are to be served at the same time instead of the federal sentence awaiting the expiration of the state sentence. They do not subject the federal sentence to any contingency of termination or change that might affect the state sentence. The applicant, though entitled to leave the penitentiary as respects his state sentence, should have been detained under his federal sentence, unless pardoned or paroled by federal authority.

[3] But his incarceration in the federal penitentiary at Atlanta seems to be unauthorized. The penitentiary acts have given the Attorney General control of the United States prisons, but have not enlarged his control over state prisons and prisoners therein. Section 792 gave him authority to transfer from state prisons to the Atlanta Penitentiary prisoners who were undergoing federal sentences therein on March 3, 1901, but no other. The order to transfer the applicant to the Atlanta

Penitentiary refers to section 698. By its terms the right to change the place of confinement there given the Attorney General is limited to cases where it is necessary for the preservation of the prisoner's health, or to relieve him from cruel and improper treatment, in both of which the change must be on the application of the prisoner, or where the place of confinement is not sufficient to secure the custody of the prisoner. The change here made was not on the application of the prisoner, nor does it appear that there was deemed to be any insecurity about the South Carolina penitentiary.

A mistake on the part of the superintendent as to the effect of the state parole would not be the insufficiency intended by the section. Section 696 authorizes the Attorney General to designate "some suitable jail or penitentiary in a convenient state or territory," when, at the time of conviction, or at any time during the term of the sentence there is no penitentiary or jail suitable or available in the district, territory, or country (in the case of a consular court), where the conviction takes place. Supposing that this section, though originally applying only to transfers to other state institutions, may now apply to transfers to the United States penitentiaries, it yet remains that there is a suitable and available penitentiary in the state and district of the conviction; so this section seems to have no application.

No sufficient authority of law being found for the removal of the applicant from the state penitentiary in the state of his conviction to which he was lawfully sentenced, he must be remanded, there to serve the remainder of his term, unless paroled under the federal law.