ALBERTSON *v.* ATTORNEY GENERAL.

1. INSURRECTION AND SEDITION—STATUTES—STATES—UNITED STATES
   —CONSTITUTIONAL LAW.
   A State statute defining "communist," "communist party," and
   "communist-front organization," requiring the State attorney
   general to prepare and publish a list of such organizations,
   requiring members thereof to register with the State police,
   and the party officers to register the party or organization,
   giving details as to its officers, funds, meeting places and
   names of members, and barring the use of election machinery
   to such party is unconstitutional, where the Federal govern-
   ment has enacted a statute proscribing seditious conduct
   against all government in the nation, national, State and local,
   in its treatment of such conduct as a matter of vital national
   concern and in providing for the common defense, preserving
   the sovereignty of the United States as an independent nation
   and guaranteeing to each State a republican form of govern-
   ment (54 Stat 670; CLS 1954, §§ 752.321–752.332).

2. COSTS—PUBLIC QUESTION—DECLARATION OF RIGHTS—SEDITION.
   No costs are allowed in suit for declaration of rights that pro-
   visions of a State antisedition act are unconstitutional, a pub-
   lic question being involved (54 Stat 670; CLS 1954, §§ 752.321–
   752.332).

Appeal from Wayne; Murphy (George B.), J.
Submitted October 12, 1954. (Docket No. 69, Calen-
dar No. 46,299.) Decided May 14, 1956.

Bill by William Albertson, William Allan and
the Communist Party of the State of Michigan, a
voluntary unincorporated association, against Frank

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur, Constitutional Law § 175.

G. Millard, Attorney General, Joseph A. Childs, Commissioner of the Michigan State Police, in their official capacities and as representatives of all law enforcement officials in Michigan, and against Owen J. Cleary, Secretary of State, to enjoin enforcement of State communist control law and to have act declared unconstitutional. Bill dismissed. Plaintiffs appeal. Reversed and decree ordered entered.

*Goodman, Crockett, Eden & Robb (Ernest Goodman, of counsel) and Lewis, Rowlette, Brown & Bell (Joseph A. Brown, of counsel),* for plaintiffs.

*Frank G. Millard, Attorney General, Edmund E. Shepherd, Solicitor General, and Daniel J. O'Hara and Charles M. A. Martin, Assistants Attorney General,* for defendants.

*Amici Curiae:*

*Harold Norris,* for Citizens' Committee Against Trucks Law.

*G. Leslie Field,* for Metropolitan Detroit Branch American Civil Liberties Union.

Boyles, J. This case is based on a supplemental bill of complaint filed by the Communist Party of the State of Michigan and 2 individuals, in the circuit court for Wayne county in chancery, seeking injunctive relief against the defendants as law enforcement officers of the State, to restrain them from taking any action to enforce sections 2, 3, 4, 5 and 7 of PA 1952, No 117, as amended by PA 1953, No 37.[*] The statute involved is commonly referred to as the

---

[*] CLS 1954, §§ 752.321–752.332 (Stat Ann 1955 Cum Supp §§ 28.-243[11]–28.243[22]).

Trucks act.   Section 11 provides that the act may be cited as the Michigan communist control law.

The bill of complaint also asks for a declaratory decree* that sections 2, 3, 4, 5 and 7 of said act are unconstitutional and invalid.

Section 2 of the act defines who is a "communist." Section 3 defines the "communist party."   Section 4 defines what is a "communist-front organization;" and requires the attorney general of the State to "prepare a list of communist-front organizations, as herein defined, which list shall be published at least annually."   Section 5 requires that a person who is a communist or is knowingly a member of a communist-front organization must register annually with the Michigan State police, under oath, upon a questionnaire prepared by the attorney general, setting forth certain information, including occupation, former residence, identification, fingerprints, et cetera.   Said section also requires that the questionnaire afford each registrant opportunity to refuse to answer any specific question on the ground that such answer would tend to incriminate him.   It further requires every officer of the communist party or of a communist-front organization to register said party or organization, under oath, on a like questionnaire, with the names of its members, and other information giving details as to its officers, funds, meeting places, et cetera.   Section 7 provides that the name of any communist or nominee of the communist party shall not be printed on the ballot used in any primary or general election.

These sections, the constitutionality of which is under attack in the instant case, were either amended or added by PA 1953, No 37.   Other sections of the act, not specifically named in the bill of complaint, declare it to be a felony for any person, with intent

* See CL 1948, §§ 691.501–691.507 (Stat Ann §§ 27.501–27.507).

to injure the United States or the State of Michigan, or any property used for national defense, to sabotage or attempt to destroy the same; and that no person may hold any nonelective job or office for the State or any political subdivision where reasonable grounds exist that such person is a communist or member of a communist-front organization.

In *Commonwealth* v. *Nelson,* 172 Pa Super 125 (92 A2d 431), the superior court of Pennsylvania upheld the conviction of Nelson for a violation of the so-called Pennsylvania sedition act, the provisions of. which are quite similar to many of those in the Michigan statute here involved. In *Commonwealth* v. *Nelson,* 377 Pa 58 (104 A2d 133), the supreme court of that State reversed, deciding the case on the issue that the Federal acts of the congress had superseded the State law. It held (syllabi):

"When a State assumes to punish sedition against the United States, it is intruding in a matter where the national interest is obviously paramount and where the Federal government's control of the field must be exclusive if it is to protect itself effectively and completely.

"Only the Federal government, with its national jurisdiction and policies, can accomplish the uniform promulgation, imposition and control of criminal sanctions for conduct hostile to the United States.

"In enacting the Smith act, congress must have understood, and therefore have intended, that Federal legislation would supersede a State statute on the same subject."

The Pennsylvania supreme court thus struck down the State statute on the ground that congress had preempted the field to the exclusion of the State act.

The supreme court of the United States, in *Pennsylvania* v. *Nelson,* 350 US 497 (76 S Ct 477, 100 L ed 640), decided April 2, 1956, on certiorari to the supreme court of Pennsylvania to review the

above decision, affirmed it.   In that case the court said (pp 498–510) :

"The supreme court of Pennsylvania, recognizing but not reaching many alleged serious trial errors and conduct of the trial court infringing upon respondent's right to due process of law, decided the case on the narrow issue of supersession of the State law by the Federal Smith act.†   *   *   *

"It should be said at the outset that the decision in this case does not affect the right of States to enforce their sedition laws at times when the Federal government has not occupied the field and is not protecting the entire country from seditious conduct. The distinction between the 2 situations was clearly recognized by the court below.   Nor does it limit the jurisdiction of the States where the Constitution and congress have specifically given them concurrent jurisdiction, as was done under the Eighteenth Amendment and the Volstead act.   *United States* v. *Lanza,* 260 US 377 (43 S Ct 141, 67 L ed 314).   Neither does it limit the right of the State to protect itself at any time against sabotage or attempted violence of all kinds.   Nor does it prevent the State from prosecuting where the same act constitutes both a Federal offense and a State offense under the police power, as was done in *Fox* v. *Ohio,* 46 US 410 (12 L ed 213) ; and *Gilbert* v. *Minnesota,* 254 US 325 (41 S Ct 125, 65 L ed 287), relied upon by petitioner as authority herein.   In neither of those cases did the State statutes impinge on Federal jurisdiction. *   *   *

"Where, as in the instant case, congress has not stated specifically whether a Federal statute has occupied a field in which the States are otherwise free to legislate, different criteria have furnished touchstones for decision.   Thus,

" 'This court, in considering the validity of State laws in the light of   *   *   *   Federal laws touching the same subject, has made use of the following ex-

† 54 Stat 670, 18 USCA, § 2385.  See, also, sections following.—RE-PORTER.

pressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. But none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick. In the final analysis, there can be no one crystal clear distinctly marked formula.' *Hines* v. *Davidowitz*, 312 US 52, 67 (61 S Ct 399, 85 L ed 581).

"And see *Rice* v. *Santa Fe Elevator Corp.*, 331 US 218, 230, 231 (67 S Ct 1146, 91 L ed 1447). In this case, we think that each of several tests of supersession is met.

"*First,* 'The scheme of Federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' *Rice* v. *Santa Fe Elevator Corp., supra,* at 230. The congress determined in 1940 that it was necessary for it to re-enter the field of antisubversive legislation, which had been abandoned by it in 1921. In that year, it enacted the Smith act which proscribes advocacy of the overthrow of any government—Federal, State or local—by force and violence and organization of and knowing membership in a group which so advocates. Conspiracy to commit any of these acts is punishable under the general criminal conspiracy provisions in 18 USC, § 371. The internal security act of 1950 is aimed more directly at communist organizations. It distinguishes between 'communist-action organizations' and 'communist-front organizations,' requiring such organizations to register and to file annual reports with the attorney general giving complete details as to their officers and funds. Members of communist-action organizations who have not been registered by their organization must register as individuals. Failure to register in accordance with the requirements of sections 786, 787* is punishable by a fine of not more than $10,000 for an offending

* 50 USCA, §§ 786, 787. The penalty is provided in 50 USCA, § 794(a).—REPORTER.

organization and by a fine of not more than $10,000 or imprisonment for not more than 5 years or both for an individual offender—each day of failure to register constituting a separate offense. And the act imposes certain sanctions upon both 'action' and 'front' organizations and their members. The communist control act of 1954* declares 'that the Communist Party of the United States, although purportedly a political party, is in fact an instrumentality of a conspiracy to overthrow the government of the United States' and that 'its role as the agency of a hostile foreign power renders its existence a clear, present and continuing danger to the security of the United States.' It also contains a legislative finding that the Communist Party is a 'communist-action organization' within the meaning of the internal security act of 1950 and provides that 'knowing' members of the Communist Party are 'subject to all provisions and penalties' of that act. It furthermore sets up a new classification of 'communist-infiltrated organizations' and provides for the imposition of sanctions against them.

"We examine these acts only to determine the congressional plan. Looking to all of them in the aggregate, the conclusion is inescapable that congress has intended to occupy the field of sedition. Taken as a whole, they evince a congressional plan which makes it reasonable to determine that no room has been left for the States to supplement it. Therefore, a State sedition statute is superseded regardless of whether it purports to supplement the Federal law. * * *

"*Second,* the Federal statutes, 'touch a field in which the Federal interest is so dominant that the Federal system [must] be assumed to preclude enforcement of State laws on the same subject.' *Rice* v. *Santa Fe Elevator Corp., supra,* at 230, citing *Hines* v. *Davidowitz, supra.* Congress has devised an all-embracing program for resistance to the various forms of totalitarian aggression. Our external

---

* 50 USCA, 1955 Supp, § 841 *et seq.*—REPORTER.

defenses have been strengthened, and a plan to protect against internal subversion has been made by it. It has appropriated vast sums, not only for our own protection, but also to strengthen freedom throughout the world. It has charged the Federal bureau of investigation and the central intelligence agency with responsibility for intelligence concerning communist seditious activities against our government, and has denominated such activities as part of a world conspiracy. It accordingly proscribed sedition against all government in the nation—national, State and local. Congress declared that these steps were taken 'to provide for the common defense, to preserve the sovereignty of the United States as an independent nation, and to guarantee to each State a republican form of government.' * * * Congress having thus treated seditious conduct as a matter of vital national concern, it is in no sense a local enforcement problem. * * *

"*Third,* enforcement of State sedition acts presents a serious danger of conflict with the administration of the Federal program. Since 1939, in order to avoid a hampering of uniform enforcement of its program by sporadic local prosecutions, the Federal government has urged local authorities not to intervene in such matters, but to turn over to the Federal authorities immediately and unevaluated all information concerning subversive activities. * * *

"When we were confronted with a like situation in the field of labor-management relations, Mr. Justice Jackson wrote:

" 'A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.'*

"Should the States be permitted to exercise a concurrent jurisdiction in this area, Federal enforcement would encounter not only the difficulties mentioned by Mr. Justice Jackson, but the added conflict

---

* *Garner* v. *Teamsters Union,* 346 US 485, 490, 491 (74 S Ct 161, 98 L ed 228).

engendered by different criteria of substantive offenses.

"Since we find that congress has occupied the field to the exclusion of parallel State legislation, that the dominant interest of the Federal government precludes State intervention, and that administration of State acts would conflict with the operation of the Federal plan, we are convinced that the decision of the supreme court of Pennsylvania is unassailable. * * *

"The judgment of the supreme court of Pennsylvania is *affirmed*."

In the light of said decisions of the supreme court of Pennsylvania and the supreme court of the United States, *supra,* the issue here narrows down to the single question whether the congress of the United States has occupied the field entered by the Trucks act to the extent that the Federal acts supersede the enforceability by the State of the provisions of said act.

It is not necessary here to indulge in any extended or lengthy detailed comparison of the specific provisions of the Trucks act with those of the Pennsylvania act which the United States supreme court struck down in its entirety. No question has been raised here pointing to any substantial difference between the two. It is sufficient to say that sections 2, 3, 4, 5 and 7 of the Trucks act are within the purview of the above decisions. Consequently, other questions raised in the briefs do not require consideration, inasmuch as they do not control decision.

Appellants' supplemental bill of complaint asks for a declaratory decree that sections 2, 3, 4, 5 and 7 of the Trucks act are unconstitutional and that the defendants be enjoined from taking any steps to enforce the same. A decree may be entered in this

Court to that effect. No costs, a public question being involved.

DETHMERS, C. J., and SHARPE, KELLY, and CARR, JJ., concurred with BOYLES, J.

SMITH and BLACK, JJ., and the late Justice REID took no part in the decision of this case.

