STATE OF IOWA ex rel. ROBERT V. DEAN et al., appellants, v. W. J. HAUBRICH, appellee.

No. 49176.

(Reported in 83 N.W.2d 451)

June 4, 1957.

John Fletcher, of Mapleton, and Kindig & Beebe, of Sioux City, for appellants.

John D. Beardsley, of Onawa, for appellee.

PETERSON, J.—This is a quo warranto proceeding, challenging the right of defendant to hold the office of mayor of Mapleton. On May 24, 1950, defendant, after a plea of nolo contendere, was convicted of income tax evasion in the United States District Court, Southern District of Iowa. He was sentenced to 12 months in such institution as directed by the Attorney General of the United States, and was fined $7500 and costs of prosecution. However, the court placed him on probation for 18 months. He had been a resident of Mapleton for many years. At the general municipal election on November 8, 1955, defendant was elected mayor of Mapleton. He received 578 write-in votes and his opponent received 238 votes. Defendant never received a Presidential pardon, although he had made application for it. On December 23, 1955, defendant received from Leo A. Hoegh, Governor of the State of Iowa, a certificate of restoration of citizen-

ship. The term of office to which defendant was elected commenced on January 2, 1956, and he filed the required oath of office and bond to qualify as mayor. On April 20, 1956, a resolution was adopted at a special meeting of the town council of Mapleton declaring the office of mayor vacant on the theory that defendant was not eligible to be elected to the office on November 8, 1955. In the same resolution the town council elected defendant mayor of Mapleton to fill the vacancy. Defendant again qualified as provided by statute. Plaintiffs made application to the County Attorney of Monona County that he proceed with a quo warranto action to challenge the right of defendant to hold the office. The County Attorney denied the application and they commenced this action. The trial court dismissed plaintiffs' petition. They have appealed.

Appellants allege five assignments of error, but same are general in their nature and to a certain extent are duplications in their content. Appellants, in fact, urge two contentions: 1. The trial court did not seem to distinguish between citizenship and suffrage. 2. Only a pardon by the power having jurisdiction over the offense (the United States) can restore the rights lost by the conviction.

This is a case of first impression in Iowa. It is a case of first impression in the nation with the exception of two almost identical cases, one in Kentucky and one in Alabama: Arnett v. Stumbo, 1941, 287 Ky. 433, 153 S.W.2d 889, 135 A. L. R. 1488; Hogan v. Hartwell, 1942, 242 Ala. 646, 7 So.2d 889. We will discuss these cases later.

I. We will consider the sequence of events as to defendant's election as mayor of Mapleton. He was first elected, as previously stated, on November 8, 1955. At that time he had secured no pardon nor restoration of citizenship. He was not eligible to vote nor to hold office. Article II, section 5, Constitution of Iowa provides: "No * * * person convicted of any infamous crime, shall be entitled to the privilege of an elector." Any crime punishable by imprisonment in the penitentiary is an infamous crime. Flannagan v. Jepson, 177 Iowa 393, 158 N.W. 641, L. R. A. 1918E 548; Blodgett v. Clarke, 177 Iowa 575, 159 N.W. 243; 22 C. J. S., Criminal Law, section 3; 14 Am. Jur., Criminal Law, section 4. Section 363.23, Code of Iowa 1954,

states: "Every official elected by a municipality shall be a qualified voter thereof * * *." Section 363.28, Code of Iowa 1954, provides: "All elected municipal officers shall take office on or before noon of the second secular day of January following their election."

 Defendant received his restoration of citizenship from the Governor of Iowa on December 23, 1955. This was after his election, but before the time fixed by statute for taking office. Where a disqualified voter is a candidate for an elective office the controlling time is the date of election. Defendant was not qualified when elected and his election was a nullity. Before he could be legally elected it was necessary that such disqualification be removed. State ex rel. Thornburg v. Huegle, 135 Iowa 100, 112 N.W. 234; McQuillin on Municipal Corporations, Volume 2, section 431.

Defendant qualified on January 2, 1956, and entered upon the duties of mayor. On April 20, 1956, at a special meeting of the town council of Mapleton a resolution was passed stating defendant was not eligible to be elected as mayor, and the office was declared vacant. There was no harm in the adoption of the resolution to this effect, but it had no legal significance. Defendant's election and qualification were nullities and the office was already vacant. The previous mayor had not qualified as a holdover. In the same resolution the council proceeded to fill the vacancy, as they now had a right to do. Section 368A.1(8), Code of Iowa 1954, provides:

"In all municipal corporations, except when otherwise provided by laws relating to a specific form of municipal government, the council shall: * * *

"Elect by ballot persons to fill vacancies in offices not filled by election by the council, and the person receiving a majority of the votes of the whole number of members shall be declared elected to fill the vacancy."

Article XI, section 6, Constitution of Iowa, provides: "In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term * * *."

 The council elected defendant mayor by unanimous vote.

982

Since his qualification, as an elector and officeholder, had been restored prior to this election the election was legal. He immediately qualified as provided by statute and, therefore, became and is the legally elected mayor of Mapleton.

■ II. The Tenth Amendment to the Constitution of the United States is important in our consideration of this case. Same provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." There are no provisions in the Constitution of the United States nor in Federal Statutes concerning qualification of electors or officeholders within the respective states. Even as to election of President, Vice-president and members of Congress, the election details are assigned to state control. The qualifications of voters and officeholders within the states were reserved to the states and are exclusively under state control. In considering the certificate issued to defendant by the Governor of Iowa, called "Restoration of Citizenship" the matter of state control of the privileges of voting and holding office is of vital importance.

■ III. Appellants contend the trial court did not seem to distinguish between citizenship and suffrage. Suffrage is only one element in our rights as citizens. Defendant never lost his citizenship. There is no provision in the Constitution of the United States nor in any Federal statute which deprives a person, committing a crime such as the one committed by defendant, of his citizenship. On this point counsel for appellants and appellee agree. Appellants state in their argument: "Conviction of an infamous crime does not deprive the criminal of his rights as a citizen. He is still a citizen unless convicted of treason." The Constitution of the State of Iowa deprives him of only *some of his rights and privileges* as a citizen: voting and office holding.

On a broad basis Webster's Dictionary defines a citizen as follows: "A member, native or naturalized, of a state or nation (as distinguished from alien)." Amendment 14 to the Constitution of the United States, section 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States * * *." As to citizenship and voting provisions in the Constitution of Iowa, see Article II, section 1: "Every * * * citizen of the United States, of the age of twenty one years, who shall have been a resident of this State six months next preceding the election, and of the County in which he claims his vote sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorised by law."

Because of the form of our Government and the demarcation of governmental functions as between National and State Governments, we have a double or dual citizenship. 14 C. J. S., Citizens, section 2, states: "In the United States there is usually a double or dual citizenship, that is citizenship in the nation and citizenship in the state in which the particular individual resides." 12 Am. Jur., Constitutional Law, section 451, page 99, states: "In the Constitution of the United States the word 'citizen' is generally, if not always, used in a political sense to designate one who has the rights and privileges of a citizen of a state or of the United States. It is so used in the first section of the Fourteenth Amendment. Under this amendment it is now clear that the inhabitants of a state have a dual citizenship, one a general or national citizenship which is independent of, and separate from, their citizenship of the particular state, and the other a citizenship of the state in which they reside." As to the citizenship of defendant it was, therefore, dual in nature. His rights as an elector and officeholder were controlled by the Constitution and statutes of the State of Iowa.

There are a multitude of citizenship rights which defendant did not lose by his crime: freedom of speech; freedom of religion; pursuit of happiness; rights of property; liberty, subject only to the restrictions of his 18-month probation; and many other rights and privileges.

IV. Appellants' principle contention is that only the President can pardon defendant as to his Federal crime. The President's pardoning power is as follows: Article II, section 2, United States Constitution: "* * * he shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment."

While the document issued to defendant by the Governor on December 23, 1955, was called in its heading "Restoration of Citizenship" its issuance and validity are based on what is commonly called the pardoning power of the Governor. Attorney General's Opinion, 1899, page 120. Article IV, section 16, Constitution of Iowa, provides: "The Governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offences except treason and cases of impeachment, subject to such regulations as may be provided by law. * * *." Chapter 248, Code of Iowa 1954, contains the legislative enactments which implement the constitutional provision as to reprieves, commutations and pardons. Section 248.12 is the specific provision of the chapter having reference to the certificate granted to defendant by the Governor. It provides: "The governor shall have the right to grant any convict, whom he shall think worthy thereof, a certificate of restoration to all his rights of citizenship. * * *."

██ The certificate issued by the Governor to defendant, as to relevant parts, is as follows:

"Restoration of Citizenship; To All To Whom these Presents Shall Come——Greetings:

"Know ye, that by authority in me vested by law I, Leo A. Hoegh Governor of the State of Iowa, in the name and by the authority of the people thereof, do hereby discharge from further liability under his sentence William J. Haubrich who was at the April term A.D. 1950 of the Federal Court of Iowa, in and for Polk County, convicted of the crime of Federal Income Tax Evasion and sentenced to one year which was suspended and placed on 18 months probation.

"I do hereby restore the said William J. Haubrich to all the rights, privileges and immunities which were forfeited by reason of said conviction.

"This Restoration of Citizenship shall not be construed as a Pardon or as a remission of guilt or forgiveness of the offense, and shall not operate as a bar to greater penalties for second offenses or subsequent convictions or conviction as a habitual criminal. * * *."

This document is not technically a pardon. It does not pur-

port to be. It affirmatively so states on its face. The Governor of Iowa could not issue a pardon commuting fines or penitentiary sentence as to a Federal crime. The Governor, under authority of the Constitution of Iowa, restored to defendant the rights he had lost under provisions of the Iowa Constitution. There is a statement in the certificate which clearly shows the extent of its functions: *"I do hereby restore the said William J. Haubrich to all the rights, privileges and immunities which were forfeited by reason of said conviction."* (Emphasis ours.) The Iowa Constitution does not restrict defendant's disqualification to crimes covered by Iowa Statutes. Since the Constitution of Iowa included defendant's crime in its disqualification, by the same token the crime was included in its pardoning provisions. The privileges of voting and office holding within the state, withdrawn from defendant, refer to powers reserved to the states under the Constitution of the United States, as we have outlined in Division II.

39 Am. Jur., Pardon, etc., section 24, states: "The chief executive of a state has no power, of course, to grant a pardon for an offense against the United States for which a conviction has been had in the Federal court, in the sense of taking away any part of the corporal punishment inflicted upon the offender. However, in the exercise of the pardoning power, the chief executive of a state may grant executive clemency, effectively restoring rights of citizenship in the state to one who has been disqualified for public office or has lost other civil rights, such as a right to vote, to act as juror, to testify as a witness, etc., as a result of a conviction of crime in a Federal court or in the courts of another state for which no pardon has been granted."

The power of a Governor to issue a restoration of rights as to Federal crimes is recognized in 39 Am. Jur., Pardon, etc., section 60, in the following provisions: "The well-settled general rule is that a full pardon restores one to all his citizenship rights, including the rights of suffrage, to serve on a jury, and to be a witness. Generally, it is held that a presidential pardon has this effect *equally with a pardon by the governor of a state,* even though the right of suffrage was forfeited by state law, although there is some authority to the contrary. While a pardon does not restore a person to a public office forfeited on his conviction

of the crime for which he was pardoned, a pardon restores to the pardoned offender his eligibility for state elective office which was forfeited by his conviction." (Emphasis ours.)

The matter of pardon is a heritage of our Anglo-Saxon judicial system. In the ninth and tenth centuries after the Kings of England were able to wrest power from the Barons, all administration of justice and all pardoning power was lodged in the King. After adoption of Magna Carta in 1215 restrictions were placed on the King's administration of Justice, but pardoning power still remained in the Sovereign. After government became more complex the King conferred the pardoning power, to be used in his name, upon certain representatives. This was the situation in colonial times. After the Revolutionary War when we established our government it was established upon the fundamental principle that all governmental power is inherent in the people. Crime is an offense against the people, prosecuted in the name of the people, and the people alone can bestow mercy by pardon. Through the Constitution of the United States the people placed the exercise of this power in the President on a national basis. Through the adoption by the people of Iowa of its Constitution the power in the State was placed in the Governor. He derives his power under Article IV, section 16, of the Constitution, supra, regulated as to implementation, but not as to inherent power, by legislative enactments. Ex parte Grossman, 267 U. S. 87, 45 S. Ct. 332, 69 L. Ed. 527, 38 A. L. R. 131 (opinion by Chief Justice Taft in 1925) ; Jamison v. Flanner, 116 Kan. 624, 228 P. 82, 35 A. L. R. 973.

In the Kentucky case of Arnett v. Stumbo, supra, defendant Stumbo was a candidate for sheriff at the primary election on the Democratic ticket. He had been convicted of violating a Federal statute and punished by two years confinement in a Federal penitentiary at Atlanta, Georgia. He received a Federal parole, not pardon, whereby he gained his liberty prior to the expiration of the two-year period. He had no Presidential pardon. The two-year period had expired before he became a candidate for sheriff. Prior to his candidacy he had received from the Governor of Kentucky a "Certificate of Restoration of the Rights of Citizenship," in which the Governor said: " 'I do hereby grant unto the said Dr. W. L. Stumbo All Rights

of Citizenship in Kentucky denied him in consequence of said conviction, and I direct that all officers of this State respect this restoration'." The action was in the nature of an injunction action against defendant and the Clerk of the Court to enjoin the placing of defendant Stumbo's name on the ballot for the primary election. The basic constitutional provisions in Kentucky are somewhat similar to ours. They state: " 'Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the general assembly may declare shall operate as an exclusion from the right of suffrage; but persons hereby excluded may be restored to their civil rights by executive pardon.' * * * 'All persons shall be excluded from office who have been, or shall hereafter be, convicted of a felony, or of such high misdemeanor as may be prescribed by law, but such disability may be removed by pardon of the Governor'."

We quote from the opinion at pages 436, 437, 438 of 287 Ky., pages 891, 892 of 153 S.W.2d, pages 1491, 1492 of 135 A. L. R.: "The entire foundation of plaintiffs' asserted grounds for relief is that Stumbo was never pardoned by the President of the United States and because thereof he was never restored to his rights of citizenship so as to qualify him to run for and hold the office he seeks, or the nomination for that office, it being axiomatic that if he was disqualified to hold the office when elected to it he is likewise disqualified from seeking it as the nominee of a political party. That contention necessarily carries with it the implication that a pardon by the chief executive of the sovereignty whose laws the convict violated is essential in order to restore the lost rights of one convicted of crime as set out in * * * our Constitution, and which rights, we repeat, relate exclusively to the right of suffrage and the holding of office in this Commonwealth. * * * Its chief executive (the Governor) is expressly authorized by the sections referred to, to lift the disabilities prescribed in them from the shoulders of the convict and to restore him to full and complete rights of citizenship. * * * As well said in brief for appellees 'it must be borne in mind that the disqualification which results from the conviction is not derived from the laws of the United States * * * but rests solely upon the Constitution of Kentucky. It is a collateral consequence,

not flowing from the offense, but resulting to the offender by reason of the Constitutional provisions alone. The right to vote and to hold office in a state comes from the State and is subject to its regulation and control.' * * * 'The conviction is not affected by the Governor's act; merely the incidental consequences (relating exclusively to suffrage and office holding rights in this Commonwealth) resulting from the operation of state laws, are cancelled and relieved.' * * * The only [question] in this case is whether or not under our Constitutional provisions the Governor of this Commonwealth had the authority to restore the citizenship rights of the defendant, Stumbo, in the circumstances detailed. Our conclusion is that he did and that in doing so he not only exercised authority that he possessed, but that it was exercised in the manner pointed out by law and for which reason the court was correct in dismissing the petition."

In the Alabama case of Hogan v. Hartwell, supra, defendant was elected commissioner of the city of Mobile in 1941. Plaintiff, as a qualified elector of Mobile, contested defendant's right to hold office. Defendant had been convicted in 1939 in the United States Court for Southern Alabama of two Federal offenses concerning false affidavit to secure a Federal loan, and using the mails to defraud. He was fined $250, which he paid, and sentenced to prison for one year and one day. The prison sentence was suspended. He never secured a Presidential pardon. The term of his sentence expired before he became a candidate. Previous to candidacy he had secured a certificate from the State Board of Pardons and Paroles restoring to him "all Alabama Civil and Political Rights" of which he was "by law deprived upon his conviction in said Federal Court." Under an Amendment to the Constitution of Alabama authority as to pardons and paroles, with exception of death penalties, was lodged in the State Board. We quote pertinent sections of the court's decision at pages 649, 650, 651 of 242 Ala., pages 890, 891, 893 of 7 So.2d:

"But coming to matters of substance, contestant insists the order is without force and that only the President of the United States could issue any effective order of that character, citing Section 2, Art. II, United States Constitution, and Harrison v. Snook, D. C., 22 F.2d 169. But there is hereby involved no

matter of remission of fine or release from imprisonment. The fine has long since been paid and the time of sentence long since expired. The only matter, therefore, in which Hartwell was interested bears relation to the restoration of his civil rights. This was originally a function of the Governor. * * * This duty (death sentences excepted) now devolves upon the State Board of Pardons and Paroles as authorized under Amendment 38, Constitution 1901, * * *.

"True only the President could grant a pardon for remission of the fine and release from imprisonment. But no official of the Federal Government would have interest in the matter of restoration of civil rights tending to the qualifications of the convicted person for an office under State authority. * * *.

"The State, therefore, alone is interested in the matter of qualifications of one holding the office of Commissioner of the City of Mobile and neither the President nor any other official of the Federal Government is concerned therewith.

"Contestant would argue there was no pardon and that restoration of contestee's civil rights was without foundation upon which to rest. But we think this argument overlooks the broad and comprehensive meaning of the word 'pardon' as found in the authorities to the effect that it is a declaration on record by 'the chief magistrate of a state or country that a person named is relieved from the legal consequences of a specific crime'. * * *

"The argument that the President only can act in cases of this character is to leave the citizen of the State entirely dependent upon the will of an officer of the Federal Government concerning a matter in which the Federal Government is without interest or concern. By analogy the case of State v. Riddle, 213 Ala. 430, 105 So. 259, is authority for the conclusion that in instances of this character the State Board of Pardons and Paroles has authority to act whether the conviction be in a State or Federal Court. And the provisions in Title 17, §16, Code 1940, conferring power on the State Board to restore 'citizenship with the right to vote' of one who is disqualified from voting by reason of conviction, whether the conviction was had in a State or Federal Court, likewise points to the same end. * * *

"Upon due consideration of the various grounds of contest

we are persuaded they are without merit and that the ruling of the court below in favor of contestee is correct and should be here affirmed."

Even though subject to the realization of undue length, we desire to quote a statement from an Oklahoma case. State ex rel. Cloud v. State Election Board, 169 Okla. 363, 366, 36 P.2d 20, 23, 94 A. L. R. 1007, 1011. Kiger had been convicted of embezzlement and sentenced to three years in State Penitentiary. Kiger's suffrage and office-holding rights had been restored by the Governor. Being a state offense, the case does not involve the principal question before us, but it contains language peculiarly applicable herein. At a primary election for representative in the Legislature, Kiger received the highest number of votes. Cloud was next and challenged his right of candidacy. The court said: "A conviction of a felony in our courts not only creates a stain upon the character, but brands the felon as unworthy to occupy certain positions of trust and responsibility. While this is as it should be, nevertheless, a felon who has paid the price exacted by the law for his transgressions should be given opportunity to prove by years of exemplary living that he has worked out a reformation of his own life, and removed, in some degree, at least, the stain against his character, and to demonstrate that he is worthy of trust. The record shows that the respondent was convicted and sent to prison from Seminole county. *In the same county he received a majority of the votes cast for the office in question over the relator.* The public records were on file in said county showing the facts relating to his conviction. Provision is made by the Constitution to the effect that a convicted felon is ineligible for election as Representative. Provision is also made by the Constitution for the removal of such ineligibility by the grant of a full pardon by the Chief Executive of the state. Such ineligibility of respondent having been removed, relator is without right." (Emphasis ours.)

V. Appellants cite only five cases in support of their contentions, three in the brief and argument and two in the reply brief. We will analyze the cases briefly.

The first case cited is Ex parte Grossman, supra. Defendant was held in contempt of court, in a Federal Court case, for violating an injunction to abate maintenance of a nuisance by

sales of liquor contrary to National Prohibition Act. He was fined $1000 and sentenced to imprisonment in Chicago House of Correction for one year. The President issued a pardon commuting defendant's sentence to payment of the fine, and canceling the prison term. The court committed Grossman in spite of the pardon, and action in habeas corpus was commenced by Grossman. The contention was that the President could not interfere in court procedure under his constitutional pardoning power. The court distinguished between civil contempts and criminal contempts and held that as to criminal contempts the pardoning power of the President was effective.

The case of Pennsylvania v. Nelson, 350 U. S. 497, 505, 76 S. Ct. 477, 482, 100 L. Ed. 640, is a sedition case. The Legislature of the Commonwealth of Pennsylvania had enacted sedition statutes. Defendant was convicted under the statutes and the case was appealed to the Supreme Court of the United States on the theory that the legislative and judicial field of sedition was exclusively under the jurisdiction of the United States rather than the states. The Supreme Court struck down the state statutes and stated as follows: " 'Sedition against the United States is not a *local* offense. It is a crime against the *Nation*. As such, it should be prosecuted and punished in the Federal courts where this defendant has in fact been prosecuted and convicted and is now under sentence. It is not only important but vital that such prosecutions should be exclusively within the control of the Federal Government * * *'."

The case of Albertson v. Millard, 1956, 345 Mich. 519, 527, 77 N.W.2d 104, 108, is an injunction action by the communist party to enjoin enforcement of State of Michigan antisedition legislation commonly known as Trucks Act. The case involves the same question as was decided by the Supreme Court in Pennsylvania v. Nelson, supra. On the basis of that decision the Supreme Court of Michigan said: "In the light of said decisions of the Supreme Court of Pennsylvania and the Supreme Court of the United States, supra, the issue here narrows down to the single question whether the Congress of the United States has occupied the field entered by the Trucks Act to the extent that the Federal acts supersede the enforceability by the State of the provisions of said act. * * * Appellants' supplemental bill of complaint asks

for a declaratory decree that sections 2, 3, 4, 5 and 7 [the sections as to sedition] of the Trucks Act are unconstitutional and that the defendants be enjoined from taking any steps to enforce the same. A decree may be entered in this Court to that effect."

Appellants cite Riggs v. Johnson County, 73 U. S. (6 Wall.) 166, 18 L. Ed. 768. This was an Iowa case reaching the United States Supreme Court. The decision was rendered in December of 1867. The Circuit Court of the United States for Iowa had issued a writ of mandamus against the county officers of Johnson County to levy a tax to pay a judgment rendered for interest on railroad bonds. Previously a state district court had issued a perpetual injunction against the making of the levy by the county officers. The Supreme Court affirmed the decision of the Circuit Court on the theory that the proceeding was ancillary to the judgment which had been rendered on the bonds, and constituted a method of enforcing the judgment, and the injunction of the state court was, therefore, ineffective.

The cited case of Mechanics Ins. Co. v. Hoover Distilling Co., 182 F. 590, 105 C. C. A. 128, 31 L. R. A., N.S., 873, is a decision of Circuit Court of Appeals, 8th Circuit, rendered in 1910. A stock of intoxicating liquor stored at Oskaloosa, Iowa, by Hoover Distilling Co., appellee, was destroyed by fire. They sued Mechanics Ins. Co., appellant, and a group of other insurance companies on fire insurance policies issued by the companies on the stock of goods. The principal defense of the insurance companies was that the stock of intoxicating liquor was held by appellee in Iowa contrary to the prohibition laws of Iowa. They urged a state statute forbidding the maintenance of any action for recovery of value of intoxicating liquor, except where persons owning it or possessing it with lawful intent have been illegally deprived of it, as stated in section 2423, Code of Iowa 1897. The court stated at page 594 of 182 F.: "The policies of insurance were not prohibited by the statutes or contrary to the public policy of the state of Iowa, and its laws were ineffective to forbid the maintenance of actions upon them in the national courts, and the objection to the judgments in issue on these grounds cannot be sustained."

From these brief synopses it can readily be observed that these cases do not support appellants' contention that a pardon

from the President was necessary in order to restore to defendant his right of suffrage, and his right to hold office, in the State of Iowa. None of them pertains to the question of citizenship, nor to the proposition of exclusive pardoning power in the President as to Federal offenses.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.