937 So.2d 343 (2006)
Max T. MALONE, et al.,
v.
Joe SHYNE.
No. 2006-C-2190.
Supreme Court of Louisiana.
September 13, 2006.
*345 The Pesnell Law Firm, Billy Ray Pesnell, John Whitney Pesnell, William Alan Pesnell, Shreveport, for Applicant.
Booth, Lockard, Politz & Lesage, Bennett Louis Politz, Weiner, Weiss & Madison, Michael Allyn Stroud, Shreveport, S.P. Davis, for Respondent.
CALOGERO, Chief Justice.
The pivotal issue in this election case, which involves a challenge to candidacy of a person who seeks election to the Shreveport City Council, is whether, pursuant to La. Const. art. I, § 10, a pardon issued by the governor of the state of Louisiana is sufficient to restore the right to seek and hold a municipal or state office to one convicted of a federal felony (a right that is lost under Louisiana law as a collateral consequence of a felony conviction in a federal court), or whether only a pardon from the president of the United States is sufficient to restore that right. Finding that only a pardon from the president of the United States can restore collateral consequences of a federal felony conviction, even if those rights are lost solely as a consequence of Louisiana state law, the *346 district court held that the candidate herein is prohibited from seeking or holding a municipal or state office. By a 6 to 3 majority, the court of appeal, sitting en banc, found that the governor of the state of Louisiana has constitutional authority to issue a pardon that restores collateral civil rights lost as a consequence of Louisiana law, even when a party is convicted of a federal felony. Thus, the court of appeal reversed the district court decision.
For the reasons that follow, we find that the governor of the state of Louisiana does indeed have constitutional authority to issue a pardon that restores collateral civil rights forfeited as a consequence of state law, even if the party was convicted of a federal felony, and thus we affirm the decision of the court of appeal.

FACTS AND PROCEDURAL HISTORY
Defendant, Joe Shyne, was convicted of a federal felony on April 7, 1994, when he pled guilty in United States District Court for the Western District of Louisiana, to the crime of extortion by a public official, a violation of the "Hobbs Act," 18 U.S.C. 1951. Mr. Shyne served a twelve-month, one-day prison sentence, from which he was released on May 15, 1995. Thereafter, Mr. Shyne attempted to run for election to the Shreveport City Council in 2002, but was disqualified as a candidate pursuant to the 1998 amendments to La. Const. art. I, § 10(B), which prohibit convicted felons from seeking or holding public office until fifteen years have elapsed from the completion of their sentence.[1] La. Const. art. I, § 10(B) provides an exception to that prohibition for convicted felons who "have been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced." On August 29, 2003, following Mr. Shyne's disqualification from seeking and holding a municipal or state office in 2002, he was issued a "Grant of Clemency" by Louisiana Governor Murphy J. "Mike" Foster, upon the recommendation of the State Board of Pardons. The "Grant of Clemency" stated as follows:

WHEREAS, THE LOUISIANA BOARD OF PARDONS, IN ACCORDANCE WITH ART. 4, SEC. 5 OF *347 THE LOUISIANA CONSTITUTION OF 1974, HAS RECOMMENDED THAT I GRANT A FULL PARDON WITH RESTORATION OF ALL CIVIL AND CITIZENSHIP RIGHTS, EXCEPT FOR THE RIGHT TO OWN, POSSESS, RECEIVE, SHIP, AND TRANSFER FIREARMS TO JOE SHYNE:

NOW, THEREFORE, I, M.J. "MIKE" FOSTER, JR., GOVERNOR OF THE STATE OF LOUISIANA BY THE POWER VESTED IN ME BY ARTICLE 4, SECTION 5 OF THE LOUISIANA CONSTITUTION OF 1974, DO HEREBY GRANT A FULL PARDON WITH RESTORATION OF ALL CIVIL AND CITIZENSHIP RIGHTS, EXCEPT FOR THE RIGHT TO OWN, POSSESS, RECEIVE, SHIP AND TRANSFER FIREARMS TO JOE SHYNE AND DO HEREBY DIRECT YOU TO ACT ACCORDINGLY, AND FOR SO DOING THIS SHALL BE YOUR SUFFICIENT WARRANT AND AUTHORITY.
IN WITNESS WHEREOF, I HAVE SET MY HAND AND CAUSED TO BE AFFIXED THE GREAT SEAL, OF THE STATE OF LOUISIANA, AT THE CAPITOL, IN THE CITY OF BATON ROUGE, ON THIS 29TH DAY OF AUGUST, 2003.
(Italics emphasis in original; boldface emphasis added.)
Relying on Governor Foster's pardon, Mr. Shyne filed a notice of candidacy for District "F" of the Shreveport City Council in the primary election to be held on September 30, 2006. James Edward Green (hereinafter "the challenger"),[2] who is also a candidate for the District "F" Shreveport City Council seat, filed a timely petition to disqualify Mr. Shyne as a candidate for office, asserting that the governor of the state of Louisiana lacks constitutional authority to pardon someone convicted of a federal felony and that Mr. Shyne is therefore disqualified by La. Const. art. I, § 10(B) from seeking and holding a municipal or state office until the passage of 15 years from the completion of his sentence. In support of his argument that the governor of Louisiana lacks authority to pardon Mr. Shyne of his federal felony offense, the challenger cited La. Const. art. IV, § 5(E), which authorizes the governor to pardon "offenses against the state," a phrase that he defines to mean only convictions for offenses that violate Louisiana state law.
Following a trial in the matter, the district court found that Mr. Shyne was "prohibited from qualifying at this time for the public office of District `F' of the Shreveport City Council," and ordered that his name be removed from the list of qualified candidates for the primary election. In so concluding, the district court stated that, given a choice, it might find that the governor's pardon was sufficient to restore Mr. Shyne's right to seek and hold a municipal or state office, but that it could not "ignore" two things: (1) this court's statements in State v. Baxter, 357 So.2d 271 (La.1978) relative to the power of the President of the United States to pardon federal felonies, and (2) the language of La. Const. art. IV, § 5(E)(1), which establishes the general gubernatorial pardon power, giving the governor authority to pardon "offenses against the state." Accordingly, the district court found that "a conviction for a federal offense is not relieved by a pardon issued by the governor." Id. at 273.
A 6 to 3 majority of the court of appeal, sitting en banc, reversed the judgment of the district court and held that Mr. Shyne is qualified to seek and hold a municipal or state office. In support of its decision, the court of appeal majority focused primarily on the fact that La. Const. art. I, § 10(B)(1) expressly provides that disqualification *348 from seeking or holding a municipal or state office ends if the party has "been pardoned either by the governor of this state or by" the President of the United States. Malone v. Shyne, 41,781, at 6 (La.App.2d Cir.8/29/06), 936 So.2d 1279, 1283 (emphasis in original). On the basis of the either-or language in the constitutional provision, the court of appeal stated as follows:
A literal reading of this pardon provision does not require that only the president may pardon a federal felon and free him from Louisiana's constraint. Likewise, the provision indicates that the governor may pardon a person convicted in the federal system of a crime which would amount to a felony in Louisiana. Our research finds that the federal law allows a gubernatorial pardon of a federal felon to lift a state imposed constraint on the party. Thus, the question presented is solely a matter of our state's constitutional grant of the power to the governor and whether it allows the governor to remove the Louisiana disqualification from a person convicted of a federal crime.
Id. at 6, 936 So.2d at 1284. The challenger sought supervisory writs in this court, which we granted on September 5, 2006. Malone v. Shyne, 06-C-2190 (La.9/5/06), 936 So.2d 820.

RELEVANT CONSTITUTIONAL PROVISIONS
Determination of whether Governor Foster's pardon of Mr. Shyne was sufficient to restore his right to seek and hold a municipal or state office depends upon the interpretation and interplay of the following provisions of the Louisiana Constitution, quoted in pertinent part:
La. Const. art. I, § 10: Right to Vote; Disqualification From Seeking or Holding an Elective Office
* * * * *
(B) Disqualification. The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:
(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.
(Emphasis added.)
La. Const. art. I, § 20: Right to Humane Treatment
No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.
(Emphasis added.)
La. Const. art. IV, § 5: Governor; Powers and Duties
Section 5. (A) Executive Authority. The governor shall be the chief executive officer of the state. He shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed.

*349 * * * * *
(E) Pardon, Commutation, Reprieve, and Remission; Board of Pardons.
(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender convicted of a non-violent crime, or convicted of aggravated battery, second degree battery, aggravated assault, mingling harmful substances, aggravated criminal damage to property, purse snatching, extortion, or illegal use of weapons or dangerous instrumentalities never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
* * * * *
(K) Other Powers and Duties.
The governor shall have other powers and perform other duties authorized by this constitution or provided by law.

DISCUSSION
Interpretation of constitutional provisions is controlled by the principles set forth below by this court in Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066 (La.7/6/04), 880 So.2d 1:
The starting point in the interpretation of constitutional provisions is the language of the constitution itself. When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect. Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning.
When the constitutional language is subject to more than one reasonable interpretation, it is necessary to determine the intent of the provision. In seeking to ascertain constitutional intent, the same general rules used in interpreting laws and written instruments are followed. When construing an ambiguous constitutional provision, a court should ascertain and give effect to the intent of both the framers of the provision and of the people who adopted it; however, in the case of an apparent conflict, it is the intent of the voting population that controls.
In construing a constitutional provision, the courts may consider the object sought to be accomplished by its adoption, and the evils sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed. Additionally, if one constitutional provision addresses a subject in general terms, and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail. However, where the language of a constitutional prohibition makes its aim evident and unequivocal, courts need not consider the historical basis for the prohibition and may not, by separately considering related constitutional provisions, arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the related provisions.
Id. at 6-8, 880 So.2d at 7 (citations omitted).
Interpretation of the constitutional provisions at issue in this case is complicated by the fact that the conflicting lower court decisions are apparently based on application *350 of the same general principle of statutory construction, that the language of plain, unambiguous constitutional provisions must be given effect. However, the two courts applied that principle to two different constitutional provisions. The district court's decision focuses on the language of La. Const. art. IV, § 5(E) authorizing the governor of the state of Louisiana to "pardon those convicted of offenses against the state." Based on the emphasized language, the district court found that the governor's authority to pardon is limited to "offenses against the state," a phrase that he she apparently interpreted to apply only to felony violations of state law, in contrast to felony violations of federal law. The court of appeal, on the other hand, focused on the language of La. Const. art. I, § 10(B), excepting, from the general rule prohibiting parties convicted of felony offenses from seeking or holding a municipal or state office, those who have "been pardoned either by the governor of this state or" by the President of the United States (in this latter instance, for a federal felony offense, no doubt). Based on the emphasized language in that provision, the court of appeal found that "the provision indicates that the governor may pardon a person convicted in the federal system of a crime which would amount to a felony in Louisiana." Malone, 41,781, at 6, 936 So.2d at 1284.
However, our consideration of the constitutional provisions cited above in light of the arguments of the parties and the decisions of the lower courts, as well as our understanding of the meaning of the terms used therein, convinces us that the language of neither of the two constitutional provisions relied upon by the lower courts is entirely "clear and unambiguous."
For example, the challenger insists and the district court found that the language in La. Const. art. IV, § 5(E), authorizing Louisiana's governor to pardon "offenses against the state," can only be interpreted to limit the governor's general pardon power to persons convicted of a felony by a Louisiana state court. In fact, this argument is the linchpin of the challenger's claims. He asserts that, if La. Const. art. I, § 10(B) and La. Const. art. IV, § 5(E) are properly read in pari materia, they are not ambiguous. According to the challenger, La. Const. art. I, § 10(B) cannot be considered to extend the governor's power to pardon beyond his general power to pardon "offenses against the state," established by La. Const. art. IV, § 5(E). This argument is, however, premised on the challenger's insistence that "offenses against the state," can only mean convictions under Louisiana law.
On the other hand, Mr. Shyne argues and the court of appeal found, that the phrase "offenses against the state" has a broader meaning and refers to any felonious conduct that is prohibited by Louisiana law, even if the person was actually convicted by a court in another jurisdiction. We find that both of those interpretations are reasonable interpretations of the phrase "offenses against the state," as used in La. Const. art. IV, § 5(E), such that the provision is not "clear and unambiguous." Ultimately then, the question of the proper interpretation to be given "offenses against the state," depends on something other than the language of the constitutional provisions.
Likewise, the arguments of the parties and the decisions of the lower courts reveal a disagreement over the correct definition to be given to the word "pardon," as it is used in La. Const. art. I, § 10(B). The challenger contends that the word "pardon" is essentially a "term of art" that can only be used to describe an act of an authorized official that has a number of different effects: (1) relieves the punishment *351 ordered, (2) restores the convicted felon's "status of innocence," and (3) incidentally restores any collateral civil effects flowing from the conviction. Conversely, Mr. Shyne asserts, although a pardon may have the three effects listed above, a pardon from the governor, who he admits cannot relieve punishment imposed by a federal court or restore his "status of innocence," can nevertheless restore the collateral civil effects imposed by state law flowing from his federal felony conviction, and still qualify as a pardon for purposes of La. Const. art. I, § 10(B). Again, our consideration of these arguments, coupled with our understanding of the meaning of the term "pardon," as used in La. Const. art. I, § 10(B), convince us that that term is not "clear and unambiguous." The United States Supreme Court has recognized that the term "pardon" is "generic," and necessarily includes "every species of pardon." See Ex Parte Garland, 71 U.S. (4 Wall.) 333, 351, 18 L.Ed. 366 (1866), which recognized that the power to pardon includes the power to issue limited or partial pardons.
Interpretation of La. Const. art. I, § 10(B) is difficult also because of the "either-or" language, which Mr. Shyne claims authorizes either the governor or the president of the United States to issue a pardon to restore his right to seek and hold a municipal or state office. The challenger argues that the either-or language in La. Const. art I, § 10(B) anticipates two classes of convicted felons: (1) those convicted of a felony violating a state law, who may be pardoned by the governor, and (2) those convicted of a felony violating the law of some other jurisdiction, who cannot be pardoned by the governor, but only by the official having authority to issue a pardon in the jurisdiction where the conviction occurred.
The parties to this case cite primarily two constitutional provisions in support of their arguments. Those two provisions address the same subject matter to the extent that they both contain clauses relative to the authority given to the governor of the State of Louisiana to issue pardons. Neither of those provisions, we have found, is clear and unambiguous. Accordingly, we are required by the principles set forth in Ocean Energy to determine the intent of the provisions by application of the well-recognized principles for construing constitutional provisions set forth therein. 04-0066 at 7, 880 So.2d at 7. One of those principles is as follows:
[I]f one constitutional provision addresses a subject in general terms, and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail.
Id.
A rational construction of these two provisions is that they are not really in conflict. As we interpret La. Const. art. IV, § 5(E), and as the court of appeal held, the phrase "offenses against the state" refers to convictions for felonious conduct that incidentally offends any provision of Louisiana state law, even if the conviction for that offense occurs in a federal court or a court in another state or jurisdiction.[3] Thus, La. Const. art. IV, § 5(E) does not restrict the gubernatorial power to pardon to convictions in Louisiana state court, as the challenger asserts.
*352 Further, even if the two constitutional provisions cited by the parties herein are in conflict, La. Const. art. I, § 10(B) prevails over La. Const. art. IV, § 5(E), pursuant to two well-recognized provisions of statutory construction. The first of those is the principle that a more detailed provision will prevail over a more general provision addressing the same subject matter. Id. The basic controversy in this case is whether Mr. Shyne is qualified to seek and hold a municipal office in the state of Louisiana. While La. Const. art IV, § 5(E) addresses the general gubernatorial pardon power, La. Const. art. I, § 10(B) is the more detailed provision on the question of disqualification of a convicted felon to seek and hold a municipal or state office and the governor's authority to issue pardons to restore qualifications to seek and hold a municipal or state office.
The second general principle of constitutional construction applicable here provides that the latest expression of the will of the people prevails over previously-enacted conflicting provisions. See Pumphrey v. City of New Orleans, 2005-979, p. 13 (La.4/4/06), 925 So.2d 1202, 1210.[4] When La. Const. art. IV, § 5(E) was adopted by the people of Louisiana as a part of the 1974 Louisiana Constitution, the constitution contained no provision disqualifying a convicted felon from seeking a municipal or state office. Because no such disqualification existed, no reason existed to expressly include a provision authorizing the governor to issue a pardon to remove that disqualification. It was not until the adoption of the 1998 amendment to La. Const. art. I, § 10(B) that such a disqualification became a part of the constitution. Concurrent with the adoption of that disqualification, the people of the state of Louisiana limited the disqualification by specifically providing that a pardon removes the disqualification. Thus, in addition to being the more detailed of the two provisions, La. Const. art. I, § 10(B) is the latest expression of will of the people. Given the historical context surrounding the adoption of the two provisions, as well as the fact that La. Const. art. I, § 10(B) is both the more detailed provision and the latest expression of the will of the people, La. Const. art. I, § 10(B) prevails over La. Const. art. IV, § 5(E), if the two provisions are in conflict.
The only remaining question is the proper interpretation of La. Const. art. I, § 10(B), which we have already found is rendered ambiguous both by the generic nature of the word "pardon" and by the either-or language therein. Thus, this court must move on to the other principles of constitutional construction stated in Ocean Energy and "determine the intent of the provision." Id. In this step, we are to "ascertain and give effect to the intent of both the framers of the provision and the people who adopted it," if possible, and remember that "in the case of an apparent conflict, it is the intent of the voting population that controls." Id. We may further "consider the object sought to be accomplished by its adoption, and the evils sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed." Id.
The legislative history relative to the adoption of the 1998 amendments to La. Const. art. I, § 10(B) at issue herein provides some information about the various discussions that preceded the adoption of the amendments by the 1997 Louisiana Legislature, as well as the text that appeared *353 on the ballot when the voting population approved the amendment. However, the value of those materials in determining the "intent" of the framers and the voters, especially their intent concerning the provision allowing "either the governor of the state or" the president (or other official) to issue a pardon, is questionable at best.
The 1998 amendment to La. Const. art. I, § 10 was introduced as Senate Bill 321 of the 1997 Louisiana Legislature. In the entire legislative history, only one statement refers to the "intent" behind the proposed amendments to La. Const. art. I, § 10(B). That statement appears in the minutes of a May 14, 1997, meeting of the Senate Committee on Senate and Governmental Affairs, when the author of the provision, Senator Malone, said that the intent was "to get the most honorable people in the state running for public office." Despite that general intent of the framers, however, not every convicted felon was prohibited from seeking or holding a municipal or state office, as is clear from the text of the amended provision. Relative to the portions of the amendment that allow some convicted felons to seek and hold a municipal or state office, the minutes of a June 5, 1997, meeting of the Committee on House and Governmental Affairs contain the following statement concerning at least one Louisiana legislator's understanding of the amendments:
Representative Bruneau stated that the bill provides that if a felon has been pardoned he can run for office, and if not he can still run after 15 years. Further, he said, because there is virtually an automatic pardon for first offenders under the constitution, the bill basically refers to second offenders and allows them to run after 15 years.[5] He suggested amendments that would clarify that a convicted felon who has completed his sentence and has not been pardoned may seek and hold elective office if the date of qualification for candidacy is more than 15 years after completion of the original sentence. He expressed support for the bill.
The "Digest of the Senate Bill [321] As It Left the Senate" stated that the proposed amendment "prohibits convicted felons who have exhausted all legal remedies from seeking or holding an elected office," and that it "[p]rovides for restoration of certain right by gubernatorial pardon." (Emphasis added.) The final, "enrolled" joint resolution, which contains the language that appeared on the ballot when La. Const. art. I, § 10(B) was adopted by the voting population, includes, in addition to a preamble and the express language of the proposed amendment, the following proposition:
To prohibit convicted felons from seeking or holding public office within fifteen years of completion of sentence and to provide for expressed restoration of those rights by pardon.
As previously noted, the above summary of the legislative history provides little insight *354 into the "intent of the voting population," which, when available, should control construction of a constitutional provision. Ocean Energy, 04-0066 at 7, 880 So.2d at 7. The voters were presented with the language of the text and a summary "proposition" that refers simply to the fact that the provision includes an "expressed restoration of [the right of a convicted felon to seek and hold a municipal or state office] by pardon." The question presented herei.e., whether the provision is intended to allow the governor of the state of Louisiana to issue a pardon that restores that right when the person was convicted of a federal felonycannot be answered by reference to information regarding the intent of the voters. On the other hand, on the question of the intent of the framers of the provision, the digest that described the proposed amendment when it left the Louisiana Senate (where it was originally introduced) specifically stated that the amendment provides for "restoration of certain right by gubernatorial pardon." To the extent that this statement can be assumed to reflect the intent of the Senate, one might conclude that the intent of the framers was to allow for the restoration of the right to seek and hold a municipal or state office to a convicted felon through a pardon issued simply by the governor of the state of Louisiana, even regarding a federal conviction.
Because the available legislative history is not conclusive and because of the importance of this issue, we continue to the next step in the suggested analysis set forth by Ocean Energy for construing constitutional provisionsthe "history of the times and conditions and circumstances under which the provision was framed." 04-0066 at 8, 880 So.2d at 7. As noted by both of the lower courts, various opinions of the Louisiana Attorney General reveal that Louisiana governors have historically enjoyed the authority to pardon federal offenses, at least to the extent of eliminating the consequences of a Louisiana resident's conviction of a federal felony offense that flow solely from Louisiana law, such as disqualification from voting or holding a municipal or state office. La. Atty. Gen. Op. 103, 97-878 (3/13/80), which concedes that the governor of a state cannot fully pardon a federal offense, but nevertheless concludes that a governor can "grant executive clemency, effectively restoring rights of citizenship in the state to one who has been disqualified for public office or has lost other civil rights."
Further, research into the historical perspective on the pivotal issue in this case leads us to the conclusion that the state of Louisiana is not the only state where governors have historically exercised authority to issue pardons that restore collateral civil rights forfeited by parties convicted of federal felonies as a result of state law, as demonstrated by the following statements of the general rules:
The chief executive of a state has no power to grant a pardon for an offense against the United States for which a conviction has been had in the federal court, in the sense of taking away any part of the corporal punishment inflicted upon the offender. However, in the exercise of the pardoning power, the chief executive of a state may grant executive clemency, effectively restoring rights of citizenship in the state to one who has been disqualified for public office or has lost other civil rights, such as a right to vote, to act as juror, to testify as a witness, and so forth, as a result of a conviction of crime in a federal court or in the courts of another state for which no pardon has been granted. This remains applicable to allow a state official to restore citizenship notwithstanding that the person in question has not been pardoned or restored to the rights of *355 citizenship by the President of the United States.
50 Am.Jur.2d Pardon and Parole § 24, relying on Arnett v. Stumbo, 287 Ky. 433, 153 S.W.2d 889 (1941); State of Iowa ex rel. Dean v. Haubrich, 248 Iowa 978, 83 N.W.2d 451 (Iowa 1957).
The well-settled general rule is that a full pardon restores one to all his citizenship rights, including the rights of suffrage, to serve on a jury, and to be a witness. Generally, it is held that a presidential pardon has this effect equally with a pardon by the governor of a state, even though the right to suffrage was forfeited by state law, although there is some authority to the contrary. While a pardon does not restore a person to a public office forfeited on his conviction of the crime for which he was pardoned, a pardon restores to the pardoned offender his eligibility for state elective office which was forfeited by his conviction.
39 Am.Jur. Pardon and Parole § 60, also relying on Arnett, 287 Ky. 433, 153 S.W.2d 889; Dean, 248 Iowa 978, 83 N.W.2d 451.
The seminal case on this issue, Arnett, 287 Ky. 433, 153 S.W.2d 889, involved remarkably similar facts to the facts in this case. Like this case, Arnett involved a challenge to the candidacy for state election of a party who had previously been convicted of a federal felony offense. Id. According to the court, the "entire foundation" of the challenger's argument in Arnett was the proposition that the candidate "was never pardoned by the President of the United States and because thereof he was never restored to his rights of citizenship so as to qualify him to run or hold the office he seeks, or the nomination for that office." Id. at 891. The court stated as follows:
As is well said in brief for [the candidate] "it must be borne in mind that the disqualification which results from the conviction is not derived from the laws of the United States (or other convicting sovereignties), but rests solely upon the Constitution of Kentucky. It is a collateral consequence, not flowing from the offense, but resulting to the offender by reason of the Constitutional provisions alone. The right to vote and to hold office in a state comes from the State and is subject to its regulation and control." We also approve another statement in the same brief saying "the conviction is not affected by the Governor's act; merely the incidental consequences (relating exclusively to suffrage and office holding rights in this Commonwealth) resulting from the operation of state laws, are cancelled and relieved."
Id. at 891-92.
Another historical case on this issue is Dean, 248 Iowa 978, 83 N.W.2d 451, in which the court held that a candidate previously convicted of a federal felony was eligible to seek and hold office following the restoration of his citizenship rights by the Iowa governor. One of the primary bases of the Iowa Supreme Court's decision in Dean is the language of U.S. Const. Amend. 10, concerning which, the court stated as follows:
The 10th amendment to the constitution of the United States is important in our consideration of this case. Same provides; `The powers not delegated to the United States by the Constitution, nor prohibited by it to the States are reserved to the States respectively, or to the people.' There are no provisions in the Constitution of the United States nor in the Federal Statutes, concerning qualification of electors or office holders within the respective states. Even as to election of President, Vice-President and members of Congress, the election details are assigned to state control. *356 The qualifications of voters and office holders within the states were reserved to the states and are exclusively under state control.
Id. at 982, 83 N.W.2d at 453.
As demonstrated by the above quotations, the authority of state governors to issue pardons restoring collateral civil rights forfeited solely as a result of state law, including the right to seek and hold a municipal or state office, to persons convicted of federal felonies has historically been affirmed. Thus, our conclusion that Louisiana's governor has the constitutional authority and legal right to restore Mr. Shyne's right to seek and hold a municipal or state office by issuing a pardon, despite the fact that Mr. Shyne was convicted of a federal felony, is not out of step with the historical rule or other jurisdictions, and is well within the authority granted to the governor by the Louisiana Constitution, as we interpret it.
Further, the well-established principle that "rules in derogation of a common right should be strictly interpreted," supports our decision herein. See Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1100 (La.1990).[6] The right to seek and hold a municipal or state office is a common right, so that any restriction on that right must be strictly construed. See State v. Adams, 355 So.2d 917, 922 (La.1978), in which this court listed the right to hold public office as one of the "basic rights of citizenship." La. Const. art. I, § 10(B) is a restriction on that right and strict construction of that provision supports this court's finding that the provision gives the governor of the state of Louisiana authority to issue pardons that restore that common right, even if the party receiving that pardon was convicted of a federal felony offense. This conclusion is also consistent with La. Const. art. I, § 20, quoted at the outset of our decision, which provides that "[f]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense."
Finally, we note that our decision does not denigrate or impinge upon the exclusive right of the president of the United States to grant pardons to parties convicted of federal felony offenses that would remove and/or relieve all of the consequences of that conviction. That right has previously been recognized by this court in Baxter, 357 So.2d at 273, and this decision does not change the statements made to that effect therein. Indeed, only the president of the United States has authority to issue a pardon that would relieve a federal felon of the punishment for his offense, and restore his "status of innocence." The challenger has been unable to point to any federal law or constitutional provision that would be offended by an interpretation of Louisiana constitutional law to give Louisiana's governor authority to restore collateral civil rights to a party who has lost those rights solely as a consequence of state law. In fact, as noted by the court in Dean, the 10th Amendment to the United States Constitution specifically reserves to the states all "powers not delegated to the United States by the Constitution, nor prohibited by it to the States," including the right to seek and hold a municipal or state office. See 248 Iowa at 982, 83 N.W.2d at 453.
The issues in this case are solely issues of state law, not impacted in any way by United States constitutional or *357 statutory provisions. In fact, the matter of establishing qualifications for seeking and holding a municipal or state office is a matter expressly reserved to the states by virtue of the 10th amendment of the United States Constitution. Accordingly, we find that, under the provisions of La. Const. art. I, § 10(B), a pardon issued by the governor of the state of Louisiana is sufficient to restore the right to hold a municipal or state office to one convicted of a federal felony offense because that right is lost solely as a consequence of Louisiana law. By virtue of his gubernatorial pardon, Mr. Shyne is therefore no longer disqualified under La. Const. Art. I, § 10(B) to seek and hold a municipal or state office in the state of Louisiana.

DECREE
Accordingly, the judgment of the court of appeal is affirmed. The challenge to the candidacy of Mr. Shyne is hereby dismissed.[7]
AFFIRMED.
VICTORY, Justice, dissents and assigns reasons.
TRAYLOR, Justice, dissents and assigns reasons.
KNOLL, Justice, dissents and assigns reasons.
WEIMER, Justice, concurs and assigns additional reasons.
VICTORY, J., dissenting.
I respectfully dissent. In my view this case is very simple. No law of our state grants the governor of Louisiana the power to pardon for a federal crime. I am supported in this conclusion by the legislative history and language of the Louisiana Constitution, the legislative history and language of the pardon statute, at least two Louisiana Supreme Court cases, and the legal position of the current Board of Pardons and the current governor.
Until this opinion, I was unaware of any ambiguity about the word "pardon," as this Court has explained this term numerous times, as discussed infra. Until this opinion, I was also unaware of any confusion about the phrase "offense against the state." It is only by finding these most basic of terms to be ambiguous that the majority reaches the misguided conclusion that the Louisiana Constitution gives the governor gives the governor the authority to pardon a person convicted of a federal offense in order to restore his right to run for public office in the state.
Under the 1921 Constitution, the governor had the authority to grant pardons and commutations of sentence upon the recommendation of the Lieutenant Governor, the Attorney General, and the judge who presided over the conviction. La. Const. of 1921, art. V, § 10. A 1968 amendment added an automatic pardon for first offenders. The 1973 Constitutional Convention entirely revamped the pardon process. Judge Helen Ginger Berrigan, Executive Clemency, First-Offender Pardons: Automatic Restoration of Rights, 2 La. L.Rev. 49 (2001). During the convention, a proposal from the Committee on the Executive Department gave the governor the complete and sole discretion to grant pardons and commutations of sentence. Id. (citing V Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts at 577 (Aug. 3, 1973)). As soon as that proposal was introduced, another amendment was proposed by some *358 who complained of past gubernatorial abuses of the clemency process, which provided that the gubernatorial power to grant clemency "may [be] restricted or limited" by the legislature. Id. (citing I Records of the Louisiana Constitutional Convention of 1973; Journal of Proceedings at 261 (Aug. 3, 1973); V Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts at 582-83 (Aug. 3, 1973)). After that amendment was defeated, the next amendment, which was ultimately adopted, proposed the creation of a Pardon Board, provided that the governor could only grant pardons upon the recommendation of this newly created pardon board, and included the automatic pardon for first offenders from the 1921 Constitution. Id. (citing I Records of the Louisiana Constitutional Convention of 1973; Journal of Proceedings at 262, 265 (Aug. 3, 1973)). Another amendment to the Constitution passed in 1999 expressly stated that the governor could only pardon based upon a "favorable" recommendation from the Pardon Board. 1999 La. Acts. No. 1401.[1]
Accordingly, La. Const. Art. IV, § 5(E)(1) sets out the governor's pardon powers as follows: "[t]he governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses." La. Const. Art. IV, § 5(E)(1) (emphasis added). This authority is contained in La. Const. Art. IV, § 5, entitled "Governor: Powers and Duties," which sets out the specific powers granted to the Executive Branch by the people. It is clear that under Article IV, § 5(E)(1), which is expressly directed at the governor's power to issue pardons, the governor can do one thing without any action by the Board of Pardons, i.e., grant reprieves to persons convicted of offenses against the state. Further, the governor can take three actions upon a favorable recommendation of the Board of Pardons: (1) commute sentences; (2) pardon those convicted of offenses against the state; and (3) remit fines and forfeiture imposed for such offenses.[2]See also State v. Jones, 94-0459 (La.7/5/94), 639 So.2d 1144, 1150 (superceded by constitutional amendment on other grounds as stated in State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382) ("except for requests for reprieve, the governor can only act on requests for clemency upon recommendation made by the pardon board"). Those are the only actions which the governor is authorized to take pursuant to his or her pardon powers. There is no provision in Art. IV, § 5 authorizing the governor to restore rights taken away because of a federal felony conviction.[3]
*359 As to any confusion in what a "pardon" means, in State v. Lee, 171 La. 744, 132 So. 219 (La.1931) we held that a pardon by the governor not only relieves the punishment for the offense, but also erases the guilt of the offender. In addition, in State v. Adams, 355 So.2d 917 (La.1978), we explained that a pardon issued by the governor under La. Const. Art. IV, § 5(E)(1) not only restores the basic rights of citizenship, it restores privileges as well as rights.[4] Significantly, the legislature was aware of the meaning of the phrase "pardon" when drafting La. Const. Art. I, § 10, as the drafter of this amendment explained to the Committee on House and Governmental Affairs that "a pardon eliminates all effects of a conviction." Committee on Senate and Governmental Affairs, Minutes of Meeting of May 14, 1997, Senate Bill No. 321 by Senator Malone. Accordingly, a pardon by the governor is no less than a restoration of innocence of the person convicted.
This Court has also spoken clearly as to what it means to be convicted of an "offense against the state." In State v. Baxter, 357 So.2d 271 (1978), this Court was presented with the issue of whether a person convicted of a federal felony offense could serve on a jury in state court. La. C.Cr.P. art. 401(5) provides that in order to qualify as a juror, a person must "[n]ot... have been convicted of a felony for which he has not been pardoned." The Court then explained that under La. Const. Art. IV, § 5, the governor of Louisiana lacks the authority to pardon a federal felony offense, stating as follows:
Only the President of the United States has the power under the Federal Constitution to grant pardons for offenses against the United States. U.S. Const. Art. II, § 2. A pardon attorney within the Department of Justice of the United States, subject to the general supervision of the Attorney General, has charge of the receipt, investigation, and disposition of applications to the President for pardon. 28 C.F.R. § 0.35 (1976). The power of the Governor of Louisiana to pardon is limited to offenses against the State. La. Const. Art. IV, § 5 (1974); La. Const. Art. V, § 10 (1921).
State v. Baxter, 357 So.2d 271 (1978) (emphasis added).[5] In Baxter, this Court logically *360 concluded that the governor is only authorized to issue pardons for "offenses against the state," which does not include federal felony convictions.
In spite of this clear language, incredibly, the majority now holds that "`offenses against the state' refers to convictions for felonious conduct that incidentally offends any provision of Louisiana state law, even if the conviction for that offense occurs in a federal court or court in another state or jurisdiction." Op. at 351. This conclusion totally ignores the fact that the power to pardon under Art. IV, § 5(E)(1) is not just directed to offenses against the state, it only for those "convicted of offenses against the state."
Aside from the holding in Baxter, the statutes governing the procedures for the granting of pardons also make clear that a pardon for a conviction of an offense against the state, means a conviction under the laws of this state. La. R.S. 15:572.4(B) provides that before considering the application for pardon of any person, the Board of Pardons must give written notice of the date and time the application will be heard to, among others, "the district attorney, the sheriff of the parish in which the applicant was convicted, and in Orleans Parish, the superintendent of police." La. R.S. 15:572.4(B)(1)(a). Further, La. R.S. 15:574(B)(1) provides that the Board of Pardons cannot consider any application for a pardon, commutation or clemency until the district attorney of the parish in which the person applying for the pardon was convicted has been notified. These are mandatory notice provisions for all pardon applications, which leads to the obvious conclusion that the convictions to which pardons must be directed are state convictions. Further, La. R.S. 15:573 provides that all sessions of the Board of Pardons must be open to the public and that "[a]ny pardon or commutation of sentence granted outside of an open, public meeting of the board shall be null, void, and of no effect." Thus, the governor simply cannot grant pardons without compliance with the Board of Pardons procedures. The majority opinion fails to mention these statutory requirements; however, the governor cannot comply with them if a conviction for an offense against the state can be a conviction in a federal court or another state court.
Further support for the conclusion that "offenses against the state" do not include federal offenses, i.e., offenses that are against the laws of the United States, is apparent when looking at La. Const. Art. IV, § 5 as a whole, particularly at the phrase authorizing the governor to "grant reprieves to persons convicted of offenses against the state". Surely the phrase "offenses against the state" relative to "reprieves" in La. Const. Art. IV, § 5 has the same meaning as the phrase "offenses against the state" in the very next phrase granting the governor the authority, upon a favorable recommendation of the pardon board, to "pardon those convicted of offenses against the state." Yet, in the context of a reprieve, "offenses against the *361 state" can only mean state crimes, because a "reprieve" actually suspends or withdraws a sentence for a period of time. State v. Babin, 319 So.2d 367 (La.1975) (quoting Black's Law Dictionary (4th ed.1951) as follows: "Reprieve: `The withdrawing of a sentence of death for an interval of time, whereby the execution is suspended. Also, the withdrawing of any sentence for a period of time ... It does not more than stay the execution of a sentence for a time ..."). The framers of the 1974 Constitution, when drafting La. Const. Art. IV, § 5, knew what a "reprieve" was, as several speakers during the debates explained:
[A reprieve] holds up the starting point of whatever sentence ... A reprieve is different from a commutation. A reprieve simply means if it's a ten year sentence, it means you don't start the sentence within the time of your reprieve. If it's a reprieve from a death sentence, it means you cannot have the death sentence enforced during the time of the reprieve.
V Records of the Louisiana Constitutional Convention of 1973; Convention Transcripts at 592. (Aug. 4, 1973). Thus, it is certain that the drafters of La. Const. Art. IV, § 5, in including the phrase "convicted of offenses against the state," had to mean persons convicted of offenses under the laws of this state. For surely no one can argue that the framers thought the governor could grant a "reprieve" of a sentence imposed by the federal government.
Clearly, La. Const. Art. IV, § 5(E)(1) does not grant the governor the power to grant pardons for federal offenses, or any of the consequences of a federal offense. Notwithstanding, the majority proceeds with an exercise in statutory construction, and concludes that even if Art. IV, § 5(E)(1) does not provide this power and is in conflict with Art. I, § 10, that Art. I, § 10 prevails as the more detailed provision "on the same subject matter" and the "latest expression of the will of the people." Op. at 352. However, as explained below, Art. I, § 10 and Art. IV, § 5(E)(1) do not address the same subject matter, and the Art. I, § 10 does not reflect "will of the people" on the issue of the extent of the governor's pardon powers.
La. Const. Art. I, § 20, which was also in effect at the time the 1998 amendment to Art. I, § 10(B) was enacted, provides that "[f]ull rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." In State v. Adams, supra, this Court held that "full rights of citizenship" included the basic rights of citizenship, "such as the right to vote, work or hold public office." Thus, under this constitutional provision, a pardon by the governor would not be necessary to restore any basic rights of state citizenship lost as a result of a federal conviction, because after the federal sentence is complete, the citizen would be restored to all his basic rights of state citizenship.
Contrary to the majority's finding that the legislative history regarding the intent of the framers in drafting La. Const. Art. I, § 10(B), and the intent of the people in enacting it, is "questionable at best," it is actually very straightforward. La. Const. Art. I, § 10 was put forth as Acts 1997, No. 1492, by one of the original plaintiffs in this case, Senator Max Malone, for the express and sole purpose of "prohibit[ing] convicted felons from seeking or holding public office within a certain time period." 1997 La. Sess. Law Serv. Act 1492 (S.B. 321) (West). It is contained not in the section of the constitution delineating the powers of the executive branch, but in the Declaration of Rights section of the constitution. La. Const. Art. I, § 10(B) provides in pertinent part:

*362 (B) Disqualification. The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:
(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.[6]
La. Const. art. I, § 10(B) (1998).
Clearly, this constitutional amendment was meant to limit the rights a citizen would otherwise have, i.e., the right to hold public office, under La. Const. art. I, § 20 and our holding in State v. Adams, supra. Nothing in this amendment and nothing in its legislative history indicates that the legislature and the people in enacting and approving this constitutional provision imposing a state law restraint on an individual convicted of a federal offense also intended to give the governor "additional" pardon powers to remove this state-imposed restraint. In fact, it merely refers to the status of the person convicted, i.e., afterwards pardoned or not pardoned, and clearly does not speak of extending any additional pardon authority to the governor.
I point out that nothing would prohibit an amendment to the constitution to allow the governor to remove the state-imposed restrictions on a person convicted of a federal felony offense. Given that the legislature and the people have chosen to deny convicted felons who have completed their sentences the right to run for public office, it would make sense for the governor to be able to remove this state imposed restriction under the appropriate circumstances. The majority's assertion that "[t]he challenger has been unable to point to any federal law or constitutional provision that would be offended by an interpretation of Louisiana constitutional law to give Louisiana's governor authority to restore collateral civil rights to a party who has lost those rights solely as a consequence of state law," Op. at p. 356, is of no moment. It does not answer the real question, which is whether the Louisiana Constitution has in fact granted the governor this power. Clearly, each state has the right to determine the qualifications for a state office. The majority opinion again fails to mention the fact that the two cases cited in support of their holding and also cited by the two Am.Jur. articles relied on so heavily by the majority, each involved state laws that specifically gave the governors of those states the power to restore the state citizenship rights of all felons. Op. at 354-55 (citing Arnett v. Stumbo, 287 Ky. 433, 153 S.W.2d 889 (1941) and State ex rel. Dean v. Haubrich, 248 Iowa 978, 83 N.W.2d 451 (Iowa 1957) and 50 Am Jur.2d Pardon and Parole § 24 and 39 Am Jur. Pardon and Parole § 60). However, there is no such provision under Louisiana law and, as stated earlier, under Art. IV, § 5, the governor may only: (1) grant reprieves to persons convicted of *363 offenses against the state; and upon favorable recommendation of the Board of Pardons, (2) commute sentences; (3) pardon those convicted of offenses against the state; and (4) remit fines and forfeitures imposed for such offenses. Nothing in La. Const. Art. IV, § 5(E)(1) gives the governor the power to issue any relief whatsoever to a person convicted of an offense against the United States.
The fact that the majority has to rely on Am Jur. treatises and clearly distinguishable opinions from other jurisdictions to reach its erroneous holding is telling. However, it is the reliance on Attorney General opinions that is even more troubling. The particular Attorney General opinion relied on in this case relied on the same Am Jur. treatises and distinguishable cases cited by the majority, was issued in 1980, well before the 1998 constitutional amendment at issue, and was thus not premised on Art. I, § 10.
Both the Attorney General opinion and the majority base their opinion on the fact that "Louisiana governors have historically enjoyed the authority to pardon federal offenses, at least to the extent of eliminating the consequences of a Louisiana's conviction of a federal felony offense that flow solely from Louisiana law, such as disqualification from voting or holding a municipal or state office." Op. at 351, n. 3, and 354. The majority opinion is very misleading. Surely the majority knows that in 1996 the Louisiana Board of Pardons resolved to discontinue processing applications for federal convictions, see U.S. Dep't of Justice, Office of the Pardon Attorney, Civil Disabilities of Convicted Felons: A State-by-State Survey 65 (1996), and that it announced again in August of 2005 that it would no longer accept applications from federal offenders. This was based on their determination that "offenses against the state" did not include federal offenses. All of this is public knowledge, as newspapers around the state also reported that the current governor and her legal advisors agree that the governor does not have the power to pardon federal offenses and does not do so. See, e.g., The Baton Rouge Advocate, "Board Decision Keeps Blanco off Political Hot Seat," (August 22, 2005). In any event, since when does past unauthorized conduct on the part of state officials determine what is in fact authorized under the constitution?
Further, La. Const. art. I, § 10 does not provide a basis for this supposed power. First, as previously noted, nothing in the legislative history even hints at such a legislative intent. The intent was clearly expressed as prohibiting convicted felons, either state or federal, from seeking and holding public office. Second, unlike the state law provisions found in the cases cited by the majority, i.e., Arnett v. Stumbo and State ex rel. Dean v. Haubrich, Art. I, § 10 does not say the convicted felon may not run unless these rights have been restored, it says "pardoned," and as stated above, Senator Malone explained what a "pardon" was when proposing this amendment. See, supra at p. 359. Thus, by using the phrase "pardoned," in Art. I, § 10, the legislature intended that Art, I, § 10 meant a pardon, not merely a restoration of the right to run for office. Third, it was with knowledge of our holding in Baxter, i.e., the governor cannot grant pardons for federal offenses, that the legislature drafted the 1998 constitutional amendment. A fair and reasonable reading of Art. I, § 10(B)(1) shows that the people intended to create two classes of convicted felons that would be disqualified and the means by which they could have the disqualification removed: (1) those who committed offenses against the state are disqualified unless pardoned by the governor; and (2) those who committed *364 offenses against another jurisdiction, i.e., another state, the United States or another nation, are disqualified unless pardoned by the appropriate authority in that jurisdiction.[7] This reading harmonizes the meaning of La. Const. Art. IV, § 5((E)(1) and Art. I, § 10(B)(1).
Fourth, the proposed constitutional amendment was presented to the people on the ballot as follows:
To prohibit convicted felons from seeking or holding public office within fifteen years of completion of sentence and to provide for expressed restoration of that right by pardon (Amend Article I, Section 10).
There was nothing indicating that the governor's pardon powers were being expanded. The proposed amendment was not even in the section of the Constitution granting the executive branch its powers, in was instead in the section of the Constitution devoted to the "Declaration of Rights" of the citizens.
The majority's argument that the "Digest of the Senate Bill [321] As It Left the Senate" stated that the proposed amendment "provide[s] for restoration of certain right [sic] by gubernatorial pardon" and that this somehow reflects the intent of the framers is incredibly weak. Op. at 353. If anything, the fact that early versions of the bill stated that the ballot would read "To prohibit convicted felons from voting or holding office and to provide for expressed restoration of those rights by gubernatorial pardon," but that the term "gubernatorial" was taken out prior to the enactment of the final version, instead indicates the legislature's awareness that a "gubernatorial pardon" was not the only type of pardon required in order to restore these rights.
Further, if La. Const. Art. I, § 10 gives this pardon authority to the governor, it broadens the powers of the governor way beyond that contemplated the by framers of the 1974 Constitution and the people in adopting that constitution. For under Art. I, § 10, the governor could grant pardons restoring a convicted felon's right to run for public office without a favorable recommendation of the Board of Pardons, which is contrary to the express provisions of La. Const. Art. IV, § 5. The people created the Board of Pardons for the purpose of ensuring that the governor's pardon power be exercised only upon favorable recommendation of the Board of Pardons. And, as stated above, it also removes all the statutory procedures that the governor is required to follow in granting a valid pardon. See La. R.S. 15:572, et seq.
Finally, the pardon granted to Mr. Shyne by Governor Foster was a "full pardon with restoration of all civil and citizenship rights," except those rights dealing with firearms, issued expressly "in accordance with Art. 4, § 5 of the La. Const. of 1974." It was not issued "in accordance with Art. I, § 10" because Art. I, § 10 does not give the executive branch its powers. And, as we stated in Lee, supra, a "full pardon" from the governor not only relieves the punishment for the offense, but also erases the guilt of the offender. Surely, no one can argue that by virtue of this pardon the governor can *365 restore the status of innocence to Mr. Shyne.
In conclusion, it is abundantly clear that any pardon for a federal conviction issued by the governor pursuant to La. Const. Art. IV, § 5 does not have the effect of removing the state-imposed disqualification from public office. I agree that the State of Louisiana has the power and authority to restore fundamental state rights to those convicted of federal crimes, it has already done so in Article I, § 20 of the Constitution as discussed previously. However, the 1998 constitutional amendment prohibits a convicted felon from running for or holding public office for 15 years following completion of sentence unless pardoned by the proper authority. The people of Louisiana simply have not given the governor the authority to pardon, or even restore civil rights, where there is a federal conviction.[8]
TRAYLOR, J., dissenting.
Our Constitution delineates the "Powers and Duties" of the Governor of this State, stating that "[t]he governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses." La. Const. art. 4, § 5(E). (Emphasis added). This is the only section of the Constitution which lists the powers and duties of the Governor.
The majority believes that another section of the Constitution also gives a power to the Governor:
The following persons shall not be permitted to qualify as a candidate for elective public office or take public elective office or appointment of honor, trust, or profit in this state:
(1) A person who has been convicted within this state of a felony and who has exhausted all legal remedies, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be a felony and who has exhausted all legal remedies and has not afterwards been pardoned either by the governor of this state or by the officer of the state, nation, government or country having such authority to pardon in the place where the person was convicted and sentenced.
La. Const. art. 1, § 10(B).
In Ocean Energy, 04-0066 (La.7/6/04), 880 So.2d 1, we discussed the proper methodology to be used in construing Constitutional provisions:
The starting point in the interpretation of constitutional provisions is the language of the constitution itself. When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect. Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning.
When the constitutional language is subject to more than one reasonable interpretation, it is necessary to determine the intent of the provision. In seeking to ascertain constitutional intent, the same general rules used in interpreting laws and written instruments are followed. When construing an ambiguous constitutional provision, a court should *366 ascertain and give effect to the intent of both the framers of the provision and of the people who adopted it; however, in the case of an apparent conflict, it is the intent of the voting population that controls.
In construing a constitutional provision, the courts may consider the object sought to be accomplished by its adoption, and the evils sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed. Additionally, if one constitutional provision addresses a subject in general terms, and another addresses the same subject with more detail, the two provisions should be harmonized if possible, but if there is any conflict, the latter will prevail. However, where the language of a constitutional prohibition makes its aim evident and unequivocal, courts need not consider the historical basis for the prohibition and may not, by separately considering related constitutional provisions, arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the related provisions.
Ocean Energy, 04-0066 (La.7/6/04), 880 So.2d 1, 7-8.
Here, the Constitutional provisions as read together and so as to comport with the United States Constitution, i.e. "reasonably," lead to the inescapable conclusion that the Governor of the State of Louisiana cannot pardon a federal felon and that, here, the Governor's purported pardon of Mr. Shyne is without effect.
Further, the majority's contention that the terms "state" and "parole" are ambiguous is likewise off the mark. The "generally understood meaning" of the word "state" as it is used in a state constitution, means a state of the Union, in this case, the State of Louisiana. Further "pardon" means, in generally understood terms, to mean, as argued by Mr. Malone, an act of an official which (1) relieves the punishment ordered, (2) restores the convicted felon's "status of innocence," and (3) (as a result of (2)) incidentally restores any collateral civil effects flowing from the conviction. Had the legislature, in drafting the article, intended for it to provide the Governor the limited power of restoration of collateral civil effects, it could have done so, as, indeed, it did in including the power to grant reprieves, remit fines, and commute sentences without resorting to the grant of a full pardon.
Assuming, as the majority concludes, that the two articles are "ambiguous," we should "ascertain and give effect to the intent of both the framers of the provision and of the people who adopted it." Ocean Energy, 880 So.2d at 7.
The legislative history of Art. IV, § 5(E) is sparse, and the intent of the legislature and citizens is, therefore, in question. As the majority points out, however, an indication of their intent relative to the adoption of Art. I, § 10, is ascertainable from a reading of the legislative history of the article.
Again, as indicated by the majority, the only direct indication of intent was Senator Malone's statement that the amendment was intended to "get the most honorable people in the state running for public office." This statement is hardly a ringing endorsement for allowing the Governor to pardon a felon convicted in Federal Court of extortion while in public office.
The majority is correct in saying that the original form of the amendment contained reference to a gubernatorial pardon. However, during negotiation with the House of Representatives, the reference to a gubernatorial pardon was removed by amendment. While not indisputable *367 evidence of the legislature's intent, rather than supporting the majority's conclusion as they argue, the removal of the term "gubernatorial" tends to show the oppositethat the majority of the legislature felt that a gubernatorial pardon was not the answer in all situations. It appears that the intent of the legislature, at least, was not to allow for pardon for all crimes by the Governor, but, instead, by the "officer of the state, nation, government, or country having such authority to pardon in the place where the person was convicted."
The language of the enrolled version of Senate Bill 321 contains the proposition presented to the voters, which states:
To prohibit convicted felons from seeking or holding public office within fifteen years of completion of sentence and to provide for expressed restoration of that right by pardon.
Again, the voting populace could hardly have intended for this right to be restored by "gubernatorial" pardon alone, because that term was never presented to the voters. Instead, it is much more likely that the voters intended that a pardon be bestowed by the authority "generally understood" to grant a pardonthe official having such authority to pardon in the place where the person was convicted.
Further, as stated in Ocean Energy, if there is a conflict between two Constitutional provisions, the provision specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Despite the majority's contention that Art. 1, § 10(B) is "unquestionably" the more specific provision, I submit that the section of our Constitution entitled "Governor; Powers and DutiesPardon, Commutation, Reprieve, and Remission; Board of Pardons," is more specific as to the powers of the Governor to grant pardons for crimes against the State of Louisiana than a section entitled "Right to Vote; Disqualification from seeking or holding an elective office." The more general statute concerning disqualification for election cannot, then, confer upon the Governor a power that was not granted specifically.
The majority makes much of the "historical perspective" to be gained from treatment of the issue in foreign courts. This issue does not involve the "historical perspective" of how the issue is treated in other states, as those states are bound by what is written in their constitutions, just as we should be bound by what is written in ours.
Our Constitution cannot grant the Governor the power to pardon offenses against the United States. Years ago, this Court explained a basic tenet of law, one with which even those untrained in law are familiar:
Only the President of the United States has power under the Federal Constitution to grant pardons for offenses against the United States. A pardon attorney withing the Department of Justice of the United States, subject to the general supervision of the Attorney General, has charge of the receipt, investigation, and disposition of applications to the President for pardon. The power of the Governor of Louisiana to pardon is limited to offenses against the State. (Citations omitted).
State v. Baxter, 357 So.2d 271, 273 (La. 1978). When a statute is ambiguous or when its literal construction produces an absurd or unreasonable result, as when the Constitution purports to give to the Governor a power which is barred by the United States Constitution, the letter must give way to the spirit of the law and the statute must be construed to produce a reasonable result. Fontenot v. Chevron U.S.A. Inc., 95-1425 (La.7/2/96), 676 So.2d 557, 562. *368 The reasonable result would be to abide by the grant of power to the Governor by our Constitution and by our prior jurisprudence.
Finally, that the majority's action is misguided, to put it mildly, is evidenced by the fact that both the Governor of Louisiana and the Board of Pardons both agree that the Governor does not have the power to pardon federal offenses. Melinda Deslatte, Board decision keeps Blanco off political hot seat, BATON ROUGE DAILY ADVOCATE, August 22, 2005.
I dissent.
KNOLL, Justice, dissenting.
The critical issue in this election contest is who can grant a pardon for a federal conviction, or stated another way, whether a Louisiana governor can grant a pardon for a federal conviction. The majority confuses this critical inquiry into an analysis of the State's authority for establishing qualifications for those seeking and holding public office. This simply is not the issue. The State's requirements for a candidate seeking public office are lost with a state or federal felony conviction. The majority fails to recognize that the Legislature and our Constitution have not provided for the restoration of these qualifications absent the lapse of a certain period of time as prescribed by law or by a pardon from one "having authority to pardon in the place where the person convicted and sentenced." In this respect, the majority opinion goes awry, and claims ambiguity exists in the pertinent constitutional provisions where the language is clear and explicit, and needs no further interpretation.
In answer to who can grant a pardon for a federal felony conviction, the United States Constitution is clearonly the President of the United States can grant this pardon as set forth in pertinent part in United States Const. art. II, § 2: "The President shall ... have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." This was also recognized by this Court in State v. Baxter, 357 So.2d 271, 273 (La.1978), which held, "Only the President of the United States has power under the Federal Constitution to grant pardons for offenses against the United States." Id., 357 So.2d at 273. Correlatively, the power of the Governor of Louisiana to pardon is limited to offenses against the State. LA. CONST. ANN. art. IV, § 5(E)(1); LA.REV.STAT. ANN. § 15:572(A). Although the majority opinion recognizes this holding in Baxter that only the President has power to pardon offenses against the United States, it nevertheless finds the governor can infringe on this exclusive constitutional grant of authority. This reasoning is not rational and leads to an absurd interpretation.
The challenged candidate in this election contest, Mr. Joe Shyne, was not without a remedy. He could have petitioned the President of the United States to obtain his pardon for the restoration of the civil rights he lost upon his federal felony conviction. He did not do this; instead, he petitioned the Governor of Louisiana to pardon his federal conviction. In my view, Governor Foster did not have constitutional authority to grant a state pardon for a federal felony conviction. Thus, the State pardon Mr. Shyne received by Governor Foster is without legal efficacy and Mr. Shyne should be disqualified from running for public office.
The Governor issued a "full pardon" to Mr. Shyne specifically stating: "BY THE POWER VESTED IN ME BY ARTICLE 4, SECTION 5 OF THE LOUISIANA CONSTITUTION OF 1974...." That constitutional article only grants the Governor the authority to grant a pardon for *369 "those convicted of offenses against the state . . . ." Mr. Shyne was convicted of a crime against the United States. I fail to see any ambiguity in this article that would lead to a broader meaning and could refer to any felony offense prohibited by Louisiana law, even if the person was actually convicted by a court in another jurisdiction. The majority opinion further finds "La. Const. art. I, § 10(B) is further complicated by the `either-or' language, which Mr. Shyne claims authorizes either the governor or the President of the United States to issue a pardon ... ." Op. at 351. Thus, the majority finds those constitutional provisions are subject to more than one reasonable interpretation. I fail to see any ambiguity in these constitutional provisions. In my view, it is an unreasonable stretch, to say the least, that "offenses against the state" somehow also means offenses against the United States. This interpretation leads to absurdity and is wrong. Additionally, I find the majority misreads LA. CONST. ANN. art. I, § 10(B) when it asserts that "the people of the state of Louisiana limited the disqualification by specifically providing that a pardon from the governor removes the disqualification." Op. at 352. LA. CONST. ANN. art. I, § 10(B) simply does not so provide. Rather, the "either-or" language in Article I, § 10 is being taken out of context by the majority opinion by failing to read the concluding phrase of that provision immediately following the "either-or" language which states: "... having such authority to pardon in the place the person was convicted and sentenced." I find the majority opinion strains to find ambiguity where none exists, and gives these constitutional provisions an unreasonable meaning.
Neither our statutory law nor our Constitution defines pardon. The majority opinion defining "pardon" as it does is attempting to craft a remedy when this matter involves state policy that is clearly better left for the Legislature to address. This is simply not our function. Mr. Shyne did not avail himself of the remedy to regain his civil rights taken away by his federal conviction. In my view, Mr. Shyne is in the wrong forum. Because the Legislature has provided a remedy for the restoration of a party's civil rights, i.e., a properly obtained Presidential pardon or the passage of fifteen years after completion of sentence, I find the majority opinion disregards the Legislature and the voice of the citizenry who passed the amendment to LA. CONST. art. I, § 10(B). While harsh, no other remedy is available and we should not create one.
Further, I note although reference is made at various parts of this litigation that Louisiana governors have granted pardons on federal offenses, such actions can neither be justified nor justify continuation of that practice. It is well established that although custom may acquire the force of law, "[c]ustom may not abrogate legislation." The Louisiana Constitution, inter alia, is the "prius of all Louisiana legislation...." Revision Comments1987, LA. CIV.CODE ANN. art. 1, Comment (d). LA. CONST. ANN. art. I, § 10(B) and LA. CONST. ANN. art. IV, § 5(E)(1) provide specificity to counter any custom Louisiana governors may have initiated.
For these reasons, I respectfully dissent and I would reverse the opinion of the appellate court and reinstate the trial court's judgment, prohibiting Joe Shyne from qualifying for or holding public office.
WEIMER, J., concurs and assigns additional reasons.
In this matter, we are not called upon to determine whether a person who has been convicted of a federal felony may seek a municipal officethat determination *370 was made by Governor Foster when he exercised the constitutionally granted authority to pardon. Our role as the judiciary is to evaluate the constitution. Under our system of government, "[i]t is emphatically the province and duty of the judicial department to say what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Interpretation of the law is a role assigned to the judiciary, which in Louisiana is a branch of government co-equal with the legislative and the executive branches. See La. Const. art. II, §§ 1 & 2; Unwired Telecom Corp. v. Parish of Calcasieu, 03-0732, pp. 17-18 (La.1/19/05), 903 So.2d 392, 405. Thus, our task is to determine whether the Louisiana Constitution allows a gubernatorial pardon to remove state-imposed limitations on the right to seek state or municipal office following a federal conviction. That determination involves evaluating the extent of the executive's constitutionally conferred pardon authority.
Louisiana Constitution art. I, § 10 was enacted as a "good government" provision which prevents a convicted felon from seeking public office. However, the governor can decide to restore the right to seek public office by wielding the power to pardon. Thus, Article I, § 10 is not a limitation on the authority of the governor, but is a limitation on the right of a person convicted of a felony to seek public office.
Our decision resonates beyond the facts of the case immediately before us. It is unlikely that the citizens of Louisiana would deliberately yield the pardon power of the governor of Louisiana to a federal authority or some foreign authority. A brief hypothetical illustrates. Assume that a soldier who is a Louisiana resident has been convicted without a hint of due process by a corrupt regime in a foreign land. Under the view urged by plaintiff, that soldier would be deprived of the right to seek public office in Louisiana until he received a pardon from that foreign regime or waited 15 years.
Significantly, the constitutionally established disqualification is not an irreversible ban from seeking public office. Instead, after 15 years, the disqualification terminates, confirming that a federal conviction does not forever prohibit the person from running for state or municipal office.
State law, not federal law, imposes the disqualification from seeking public office as a consequence of violation of a federal law. The State remains supreme within the sphere of state-imposed consequences for violation of a federal law. As such, the governor of this state has the authority to remove the state-imposed limitations on seeking state or municipal office.
There is no fallacy in the majority opinion of the court of appeal. That majority opinion did not "out-lawyer" itself, but carefully evaluated the provision at issue in a scholarly and detached manner. The language of the constitutional provision undeniably grants authority to the governor to pardon so that state civil rights are restored. This interpretation does not lead to absurd consequences; rather, it fosters the intent of the voters to limit a felon's right to seek public office without limiting the governor's pardon authority. While it remains emphatically the province and duty of the judicial branch to determine what the law means, comity demands that we respect the authority constitutionally assigned to a co-equal branch of government. If there is no limitation clearly stated in the constitution, then we should not impose such a limitation on the executive's authority to pardon.
In conclusion, the governor is afforded the discretion to wield the constitutionally granted pardon authority and to determine whether a person previously convicted of a *371 felony should be allowed to seek state or municipal office. Once the governor has exercised the authority and granted the pardon, the citizens must determine whether the person who has been convicted of a federal felony should serve as their representative. In our representative form of government the ultimate authority is with the people once the governor has issued the pardon.
NOTES
[1] The court of appeal opinion determining that Mr. Shyne was disqualified from running for Shreveport City Council in 2002 indicated that he was at that time the incumbent candidate for the District "F" Shreveport City Council seat. See Malone v. Tubbs, 36,816, p. 7 (La.App. 2 Cir. 9/6/02), 825 So.2d 585, 590. In fact, Mr. Shyne was elected to that office on November 3, 1998, after his federal felony conviction, and was apparently allowed to serve in that position from 1998 until 2002. Following his election in 1998, his qualifications to seek and hold a municipal or state office were questioned by Shreveport Mayor Robert W. "Bo" Williams, who requested an opinion from the Louisiana Office of the Attorney General. Id. Attorney General Opinion No. 98-445, issued in response to the mayor's question, concluded that Mr. Shyne was not prohibited from appearing on the general ballot because no objection to his candidacy had been made. Id. According to the 2002 Malone decision, Attorney General Opinion No. 98-445 did note that a question remained as to whether Mr. Shyne was qualified to take office after being elected. Id. Attorney General Opinion No. 98-445 has since been "recalled."

In 2002, Mr. Shyne had argued that the automatic first offender pardon recognized by La. Const. art. IV, § 5(E) restored his right to seek and hold a municipal or state office. The court of appeal rejected that argument, and ruled against Mr. Shyne, applying against his candidacy its interpretation of La. Const. art. I, § 10(B). Id. Because the record herein contains no evidence to show that Mr. Shyne qualifies for an automatic "first offender pardon," we make no decision herein regarding the correctness of the court of appeal's conclusion in the original Malone case that an automatic pardon is insufficient to restore a convicted felon's right to seek or hold a municipal or state office.
[2] The challenge to candidacy herein was originally filed by two challengers, Mr. Green, and Max T. Malone. However, Mr. Malone was dismissed by agreement of counsel after Mr. Shyne objected to his standing to bring this action, citing the fact that Mr. Malone does not reside in Shreveport City Council District "F."
[3] This interpretation is supported by the historical practice of Louisiana governors to issue pardons to federal felons. See La. Atty. Gen. Op. 103, 97-878 (3/13/80), which recites the fact that Louisiana governors issued 87 pardons to persons convicted of federal felonies in the 15 years preceding 1980.
[4] The Pumphrey case stated this as a principle of statutory, rather than constitutional, construction. However, Ocean Energy expressly recognizes that the same rules followed to interpret laws and written instruments apply to constitutional provisions.
[5] Assuming that Representative Bruneau's statement to the Committee on House and Governmental Affairs is a correct assessment of the intent of the framers in adopting La. Const. art. I, § 10(B), Mr. Shyne would presumably not have needed even a gubernatorial pardon in order to seek and hold a municipal or state office in Louisiana, because he was automatically restored to that right upon completion of his sentence. However, that argument was rejected regarding Mr. Shyne's rights by the court in Malone v. Tubbs, 36,816 (La.App. 2 Cir. 9/6/02), 825 So.2d 585, 590. As noted in footnote 2 of this decision, the record in the case before us contains insufficient evidence to show that Mr. Shyne is entitled to the benefits of the automatic first-offender pardon set forth in La. Const. art. IV, § 5(E). Thus, this court expressly declines to consider that issue herein.
[6] Judge Peatross cited this rule in his concurrence to the majority opinion of the court of appeal in this case.
[7] No application for rehearing of a decision of this court in a case involving an objection to candidacy shall be entertained. La. Sup.Ct. Rule X, § 5(C). See also La.Rev.Stat. 18:1409(I).La.Rev.Stat. 18:1409(I).
[1] Commentators have suggested that this measure was adopted out of legislative and public distrust of the gubernatorial clemency power, particularly out of fear that under the prior language, a governor could conceivably grant clemency even though the Pardon Board "recommendation" was negative. Berrigan, supra at 54, n. 30 (citing Jack Wardlaw, Son of Constitutional Amendments, The Times Picayune, Oct. 27, 1999, at B7).
[2] As we explained in State v. United Bonding Ins. Co. of Indianapolis, Ind., 244 La. 716, 154 So.2d 374, 379, n. 9, (La.1963), examples of forfeitures authorized by law of offenses against the state are forfeiture of weapons (La. R.S. 15:529.7); forfeiture of illegally possessed narcotics (La. R.S. 40:972); forfeiture of vessel, vehicle, etc. used in violation of food and drug laws (La. R.S. 40:1001); forfeiture of vehicle transporting gasoline, etc., on which state tax has not been paid (La. R.S. 47:781); forfeiture of vessel, etc., used in illegal taking or transportation of commercial fish (La. R.S. 56:386); forfeiture of vessel, etc., used in illegal taking or transportation of shrimp (La. R.S. 56:508).
[3] As this Court explained in State v. United Bonding Insurance Co. Of Indianapolis, Indiana, the governor's pardon power extends only to "offenses," "otherwise there would be no offender to be pardoned, no sentence to be commuted, and no fine to be remitted." Supra at 377 (holding that the forfeiture of a bail bond was not a forfeiture for an offense the state, but rather a civil proceeding arising out of a private contract).
[4] See also Black's Law Dictionary (6th Ed.1991) definition of pardon:

Pardon. An executive action that mitigates or sets aside punishment for a crime. An act of grace from governing power which mitigates the punishment the law demand for the offense and restores the rights and privileges forfeited on account of the offense. Verneco, Inc. v. Fidelity & Cas. Co. of New York, 253 La. 721, 219 So.2d 508, 511 (La.1969). A pardon releases offender from entire punishment prescribed for offense and from disabilities consequent on his conviction; it reinstates his civil liberties. State ex rel. Herman v. Powell, 139 Mont. 583, 367 P.2d 553, 556.
The power to pardon for non-federal crimes is generally invested in state governors, while the President has the power to pardon for federal offenses. (Art. II, Sec. 2, U.S. Const.)
[5] The juror contended that he had been granted an automatic pardon, although it turned out that because the juror's federal conviction predated the effective date of the constitutional provisions providing an automatic pardon for first offenders upon completion of their sentence, he had no such pardon. As we further explained:

And the automatic pardon to which first offenders are entitled upon completion of their sentence under Section 5(E) of Article IV of the 1974 Constitution of Louisiana is not applicable to offenses which occurred prior to January 1, 1975, the effective date of the Constitution of 1974. State v. Williams, 326 So.2d 815 (La.1976). Thus, in the absence of a pardon from the President, for his 1971 offense against the United States, Bell was not qualified to serve as a juror during Baxter's trial. There is no evidence in this record which supports a finding that Bell had been pardoned.
Thus, the only reason a pardon was necessary under the specific facts of the Baxter case was that the juror's offense occurred prior to the effective date of the 1974 Constitution.
[6] La. Const. Art. 1, § 10 also prohibits persons actually under an order of imprisonment for a felony conviction from seeking or holding public office and it allows convicted felons who have served their sentence and not been pardoned to qualify for public office 15 years after the completion of their original sentence.
[7] Justice Weimer bases his concurring opinion on his concern that a Louisiana citizen might be wrongfully convicted of a crime in a foreign country, and that clearly the people did not intent to yield the governor's pardon power to this foreign regime. However, while an unjust foreign conviction depriving a Louisiana citizen of the right to run for public office is a terrible situation, that is not the situation we have before us today. Further, the answer to this problem is not to give the governor powers he was not given by the people of this state, the answer lies in amending the constitution to address this problem.
[8] La. R.S. 18:1409(I) provides: "[n]o application for a new trial or for a rehearing shall be entertained by any court, but a court, upon its own motion, may correct manifest error to which its attention is called."